WARE *v.* STATE.

Opinion delivered July 14, 1894.

1. *Alibi—Burden of proof—Instruction.*

> Where the defense is an alibi, it is not error to charge the jury that "the burden of showing an alibi is on the defendant, but if, on the whole case, the testimony raises a reasonable doubt that defendant was present when the crime was committed, he should be acquitted."

2. *Instruction—Province of jury.*

> On a murder trial, where defendant pleaded an alibi, it is not an invasion of the jury's province for the court to charge that the jury should scrutinize the testimony of the witnesses to see if some of them might not be mistaken as to the times when they saw defendant, and whether witnesses are likely, after the lapse of time, to be certain as to the precise time they saw defendant on the night of the killing.

Appeal from Craighead Circuit Court, Jonesboro District.

JAMES E. RIDDICK, Judge.

STATEMENT BY THE COURT.

At the September, 1893, term of the Craighead circuit court for the Jonesboro district, the appellant was indicted for the murder of George Black, on the night of April 1, 1893, and at the February, 1894, term, was tried and convicted of voluntary manslaughter, and his punishment fixed at two years in the penitentiary. From this judgment of conviction he appeals, and assigns, among others, the following errors:

1st. The verdict is contrary to the law and evidence.

2d. Because the court erred in refusing to give instructions 1 and 2 asked by appellant.

3d. Because the court erred in giving instructions 5, 6, 7, 8, 10, 11, 12, 13.

The evidence shows that, on April 1, 1893, between the hours of 10 and 11 o'clock p. m., the deceased, Black, who resided about two and a half miles northeast of Jonesboro, in Craighead county, was shot, and, a day or two later, died from the effects of the wound.

Chas. Henson, an accomplice, and the principal witness for the State, testified, in substance that "on the night Black was shot, he (Henson), the appellant (Ware), together with Metcalf, Ballentine, Ray, Payne, Burrow and George and Al Counce, making nine in all, assembled at an old house near the residence of Black, between 7 and 8 o'clock, and from there all went to Black's house, for the purpose of whipping him, and compelling him to leave that neighborhood, for the reason that they did not want negroes residing in that vicinity. After arriving at Black's house, Metcalf and Henson went to the door, and demanded admittance, which was refused, whereupon they broke the door open, and Black shot Metcalf, from the effects of which he died a day or two later. A minute or two after Metcalf was shot, and while his companions were bearing him away, Black ran out of the house, and, after running a short distance, was shot. Myself and all who were with me when we went to Black's house, together with some others, were members of an organization of white-caps. I do not know who shot Black. I did not. Ware and I were at Metcalf's side, taking care of him when Black was shot. If Black had promised us to leave that neighborhood, we would not have whipped him. We did not intend to kill him, but merely to drive him away. After the shooting occurred, Ray, Payne, Ballentine and Burrow, who lived out in the country, left Black's house and went home. I did not see them any more that night. Ware, the Counce boys, Metcalf and myself came to Jonesboro."

W. N. Fisher, a witness for the State, testified as follows : "I was in Jonesboro the night Black was shot. Between 10 and 11 o'clock, John Barnett and I were going home, and, when near the railroad crossing in North Jonesboro, we met a man coming this way on a gray horse. The rider had on a white hat. I took him then to be Les Ware, but am not certain. He was coming from the direction of the place where old man Black was killed. The man on the horse was in the street, and I was on the sidewalk. I did not see the man's face, as it was partly turned away from me. I did not notice him very much."

Dr. T. H. Jones, a witness for the State, testified, in substance, as follows : "On the night Black was shot, Ware (the appellant) came to my house, and stated that he was in his office, and that a messenger had come, stating that Metcalf was hurt, but he did not know where nor how. Ware came to my house at 10:40 p. m. Instead of driving my horse, as it was about time for the hack to arrive in Jonesboro from Nettleton, Mr. Ware suggested that he would go up to the square, and watch for the hack. We then walked up to the square, and when on the north side of the square, near the post office, we met the hack. We called to Mr. Fisher, who was driving it, and engaged him to take us out to the place where Metcalf was. Ware, Counce, Fisher and myself went out in the hack, about a mile and a half from town, towards Black's, when Henson hailed us from the side of the road and piloted the hack through the woods, about a hundred yards, to where Metcalf was. I recognized Henson as one of the persons with Metcalf, and there were several others present, but I do not know who they were, nor how many there were. We put Metcalf into the hack, and came to his home in Jonesboro. He was shot in the stomach with a charge of shot varying in size. While we were at Metcalf's house, the defendant,

Ware, being present, I urged Metcalf to tell us all that occurred, and who was present. He said that he belonged to a band of White Caps, and they had been out that night and had visited old nigger Black. Speaking to the appellant (Ware), Metcalf said 'Les, I was out with the gang of White Caps, and got shot by a nigger, and know I must die, and I sent for you, as my attorney, to tell you of some business matters that need attention. I want you to look after some accounts due me, and when collected pay them to my wife.' Following this, Metcalf detailed to Ware some matters that he wanted him to attend to. Ware (the appellant) joined with me in urging Metcalf to relate all the circumstances. When Ware came to my house at 10:40, he was smoking a cigar, had his pen behind his ear, and was dressed lightly.''

There was much other testimony tending to show that Ware, the appellant, was not present at the killing of Black, the deceased, but that he was at the time of the killing, or very near that time, in the town of Jonesboro. This testimony tends to conflict with that of Henson, the accomplice. The testimony of Chas. Henson, as taken before the coroner's jury, was introduced, and it tends to show that, after Black was shot, the appellant, Ware, went from the scene of the tragedy to procure a physician to attend Metcalf, who had been shot by Black. There was also evidence tending to show that when Black fled, after having shot Metcalf, the appellant ordered those with him to shoot Black, or to kill him.

The court gave to the jury the following instructions, which were excepted to at the time, and the giving of nearly all of which are insisted upon as error; but the court has not deemed it necessary to discuss any of them but the tenth.

"1.   In this case the defendant is indicted for murder in the first degree.   The indictment alleges that he killed and murdered George Black in this district of Craighead county by shooting him with a gun.   Under this indictment the defendant may be convicted of either one of three different grades of homicide, if the proof be sufficient.   That is to say, he may be convicted of either murder in the first degree, murder in the second degree, or of voluntary manslaughter, if the proof be sufficient to convince the jury that he is guilty of either of these different degrees of homicide.

"2.   No one has the right to take the life of another unless he does so in self-defense, or in defense of his home, property, or of persons under his protection. There is no such justification claimed in this case, but the defendant, by his plea of not guilty, denies that he either killed, or aided and abetted any other person in the killing, of George Black, and the first question for the jury to determine is whether George Black was unlawfully killed in the manner alleged in the indictment, and, if so, who it was that committed the act, and whether the defendant either fired the fatal shot, or was present aiding, abetting, advising or encouraging others to commit such act.

"3.   The witness Henson, who has testified in behalf of the State, admits that he was an accomplice in such crime, and the law requires that his testimony should be corroborated.   A conviction cannot be had on the testimony of an accomplice unless he is corroborated by other evidence which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense charged, and the corroboration is not sufficient if it merely shows the commission of the offense and the circumstances thereof.   There must be some fact established by the evidence, independently altogether of the evidence of

the accomplice, which, taken by itself, leads to the inference, not only that a crime has been committed, but that the defendant, Les J. Ware, was implicated in it. The fact that other witnesses may have given testimony which agrees with that of the accomplice will not constitute a sufficient corroboration of the accomplice, unless such testimony tends to identify the defendant as one of the parties participating in the crime.

"4. It is not necessary that there should be other evidence sufficient of itself, without the testimony of the accomplice (Henson), to warrant a conviction, but it is sufficient if, in addition to his testimony, there be evidence tending to show that the crime was committed, and to connect the defendant with the commission of such offense, and if the testimony of Henson is corroborated to this extent, and if the jury are satisfied of the guilt of the defendant beyond a reasonable doubt, they should find him guilty.

"5. All persons present aiding, abetting or encouraging the commission of a criminal act are in law as guilty as the person who actually commits such act, and if the jury are satisfied from the proof, under the law given by the court, that the defendant was present, aiding and abetting, advising or encouraging the unlawful killing of George Black, it will follow that they must find him guilty of one or the other of the grades of homicide mentioned above. It will be, therefore, necessary for the jury to understand the distinction between these different grades of homicide, and I will first read certain sections of the statute defining the same.

(The court here read sections 1516, 1517, 1518, 1519 and 1521 of Mansf. Dig.)

"6. To constitute murder in the first degree, the killing must have been done with premeditation, that is, the jury must believe that there was an actual intention to take the life of George Black formed in the mind of

the slayer at the time and before the fatal shot was fired, and that the defendant was present aiding, abetting, assisting, advising or encouraging such act with such intent. If they do believe this, and that such killing was done without provocation on the part of said Black, they should find defendant guilty of murder in the first degree. One who commits a homicide is not guilty of murder in the first degree unless there existed in his mind, before the act of killing, a specific intent to take the life of the person slain. But it is not necessary that such intent be formed for any particular length of time before the killing, and when it is the result of deliberation and premeditation it may be conceived in a moment.

7. The difference between murder in the first degree and murder in the second degree is that while it is necessary to show an actual intent to take life, to convict of murder in the first degree, it is not necessary to show this to convict of murder in the second degree. Murder in the second degree is a killing with malice aforethought, and when there is no considerable provocation, or when the circumstances show an abandoned and wicked disposition, malice may be implied; and if the jury believe from the evidence that a party of men, commanded by the defendant, without provocation, went to the house of George Black for the purpose of whipping him, and that when said Black resisted said unlawful attempt by trying to defend himself and then fleeing, said defendant, without further provocation, ordered those under his command to shoot at said Black, that said order was obeyed, and said Black was wounded so seriously that he died from such wounds, then defendant is guilty of murder either in the first or second degree. He would be guilty of murder in the first degree if he gave such order to shoot Black with the deliberate intention formed in his mind to take his life.

If he gave such order without provocation, but with no actual intention formed beforehand to take life, he would be guilty of murder in the second degree.

"8. Manslaughter is the killing in a sudden heat of passion, caused by provocation apparently sufficient to make such passion irresistible; and if the jury believe that the defendant is guilty, but that the killing is done in a sudden heat of passion, caused by considerable provocation, they will find him guilty of voluntary manslaughter.

"9. The guilt of the defendant must be proved beyond a reasonable doubt, and if, after considering all the evidence in the case, the jury have a reasonable doubt as to the guilt of the defendant, they will find him not guilty.

"10. The defendant in this case does not set up justification, but he undertakes to show that, at the time George Black was shot, he was not at the place where such shooting took place, but at another place, and that therefore he was not connected with or implicated in such crime. The burden of showing an alibi is on the defendant, but if, on the whole case, the testimony raises a reasonable doubt that defendant was present when the crime was committed, he should be acquitted. But the jury should scrutinize the testimony of witnesses to see if some of them may not be mistaken as to dates and times when they saw the defendant, and it is proper for the jury to consider the lapse of time since such occurrence happened, and whether witnesses are likely, after such lapse of time, to be accurate as to the precise time or hour that they saw defendant on the night that the shooting occurred. In other words, in arriving at your conclusion on this point, the jury should consider whether it may not be true that the defendant was present at the time George Black was shot, and that some of the

witnesses are honestly mistaken as to the exact time they saw the defendant on that night.

"11. The jury are the judges of the weight of the testimony and the credibility of the witnesses. In arriving at your conclusion on that question, the jury may take into consideration their manner of testifying on the stand, their intelligence, their means of knowing the facts they testified to, their interest in this prosecution, or defense, and also whether they are contradicted or corroborated by other facts proved in this case. If the testimony of the witness Henson, or any other witness, differs from that given by him on any former occasion concerning the same facts, then, in arriving at your conclusion as to what weight to attach to such differences, the jury will consider whether such discrepancies or inconsistent statements were made about material and leading matters, such as a truthful witness would not likely forget, or whether they were made about minor and unimportant matters, and such as even truthful men are liable to make when undertaking to narrate the same facts at different times. Contradictory statements made concerning material and leading facts tend to impeach and impair the credit of a witness, but contradictory statements concerning immaterial and unimportant facts, or mere verbal variations, such as most people are liable to make under like circumstances, do not ordinarily furnish grounds for disbelieving a witness, but what weight to attach to such discrepancies or contradictory statements, if proved, whether material or immaterial, is always a matter for the jury to determine in the exercise of a sound discretion. If the inconsistency or contradiction is so glaring and important as to convince the jury that the witness has intentionally, wilfully and knowingly sworn falsely, the jury may disregard his entire testimony, if they find that he is utterly unworthy of belief. But the jury should re-

member, at every stage of its deliberation, that your sole object in considering these matters is to arrive at the truth, and to find your verdict accordingly, and, even if you believe that a witness for the State has been guilty of inconsistent or even false statements concerning matters, yet if, on the whole case and after a full consideration of the whole evidence, you feel morally certain that the defendant is guilty, you should so find. And, on the other hand, if you do not 'feel satisfied of the guilt of the defendant beyond a reasonable doubt, you should find him not guilty.

"12. Something has been said by the attorneys in the argument about the race or color of the man that was killed. It is hardly necessary to remind the jury that, so far as its protection is concerned, the law, which you have sworn to uphold, makes no difference between persons, whether of different race or not. It does not say to the white man,'You shall be protected,' and to the black man, 'You are turned over to be disposed of by any band of lawless midnight prowlers that may choose to invade your home and assault you,' but it undertakes to protect all alike, and should be enforced in a spirit of fairness to all."

"13. In conclusion, gentlemen, I will say that the defendant is accused of a serious crime. There cannot be a more serious violation of the rights of a citizen than for a band of armed and masked men to invade his home at night and to assault him and take his life; but, notwithstanding the enormity of the crime, you should not convict unless you are convinced that the defendant is guilty; but if you are convinced, beyond a reasonable doubt, of his guilt, it is your sworn duty, and you should not hesitate, to find him guilty, and to assess a punishment commensurate with the enormity of the crime. The case and its responsibilities are now with you."

*Brown & Lamb* and *W. H. Cate* for appellant.

1.  The evidence does not sustain the verdict. Henson was an accomplice, and, outside of his testimony, there is not a word "tending to connect defendant with the commission of the offense." Mansf. Dig. sec. 2259.

2.  The first instruction asked by defendant should have been given. A witness who wilfully swears to a falsehood, whether material or immaterial, is unworthy of belief. 37 Ark. 67; 30 Pac. 796. The second asked embodies the true rule. 80 Mo. 71; 17 S. W. 226; 10 So. 730; 49 N. W. 616; 19 S. W. 239; 10 Pac. 502; 1 Starkie, Ev. 873; 15 Oh. St. 47; 45 N. W. 737; 44 *id.* 37; 2 Rice, Ev. p. 792; 7 Wheat. 293.

3.  The fifth instruction given is not correct unless "satisfied" is equivalent to "convinced" or "believe beyond a reasonable doubt." The sixth is still more fatally defective, and the seventh is open to the same objection. "If they (the jury) *believe*," etc., is not equivalent to "satisfied or believe beyond a reasonable doubt."

4.  The tenth is particularly objectionable, and at open war with every principle of law. Mansf. Dig. sec. 1520 is not applicable to this case. The burden was never shifted to defendant to establish an *alibi.* 10 Tex. App. 231; 13 *id.* 1; 14 *id.* 200; 17 S. W. Rep. 253; 17 N. W. 150; 20 Pac. 275; 39 Oh. St. 215; 16 *id.* 583; 5 S. E. 545; 19 Pac. 607; 17 S. W. 545; 55 Ark. 244; 1 Bish. Cr. Pr. 1061–1064; Thompson on Trials, sec. 2436. The latter part of the tenth invades the province of the jury. Const. Ark. art. 7, sec. 23; 51 Ark. 147; 63 Ind. 598; 34 Ark. 696; 37 *id.* 580; 43 *id.* 289; 45 *id.* 165; Thompson, Trials, sec. 2440. Courts must not select particular features of a case, and, after bringing them into prominence, condemn and disparage them. Whart. Cr. Ev. sec. 333; 19 Pac. 607; 10 So. 426; 39 Ill. 457; 24 Pac. 1090; 3 S. W. 868; 10 Pac. 607; Thomps. Trials,

sec. 2433; Sackett, Inst. to Juries, secs. 11 and 12. Under this instruction, the jury was prohibited from giving any credence to the evidence, unless they found that the witnesses were "certain as to the precise and exact time they saw the defendant at Jonesboro." This is not the law. If a defendant were required to prove his presence at a place and time exact, precise and certain, it would be equivalent to requiring him to prove his innocence, not only beyond a reasonable doubt, but that it was a physical impossibility for him to have been implicated in the crime. 10 So. 106; 10 So. 426; 28 Pac. 233; 42 Texas, 360; 3 N. W. 863; 17 Pac. 519. The eleventh instruction is verbose and complex. The twelfth and thirteenth are mere arguments to the jury, denouncing defendant. 110 U. S. 582; 24 Ala. 951; 51 Ark. 147.

*James P. Clarke*, Attorney General, and *Chas. T. Coleman* for appellee.

1. The first instruction was fully covered by the eleventh given.

2. The second did not state the maxim "*falsus in uno*," etc., accurately, and was properly refused. 1 Bish. Cr. Pr. sec. 1149. The rule was correctly stated in the eleventh given.

3. The criticisms urged against the fifth, sixth and seventh were obviated by giving the ninth.

4. The tenth is vigorously assailed, but is not obnoxious to the criticisms against it. It does not cast upon defendant the burden of proving innocence. When the State has introduced testimony showing that a crime has been committed, and tending to connect the defendant with its commission, the plea of an *alibi* is in the nature of confession and avoidance. In a sense, it confesses, by not denying, the *corpus delicti*, but seeks to avoid the inference of guilt cast upon the defendant by establishing such a state of facts as would make it a

physical impossibility for him to have committed the crime. In this respect the burden is on the defendant to prove an *alibi*, but an *alibi* is sufficiently proved, so far as the purposes of criminal law are concerned, when the evidence introduced to that end generates a reasonable doubt in the mind of the jury as to whether the defendant was or was not present when the offense was committed. It must be borne in mind that this instruction is limited to one particular phase of the defense. The court had already fully instructed as to the law of homicide, and the jury had been told that if they had a reasonable doubt, on the whole case, of the defendant's guilt, they should acquit. The court then takes up the special defense of an *alibi*, and the effect of the tenth instruction is that if the testimony on this head introduces a reasonable doubt of the defendant's presence at time of the homicide, the jury should acquit. 1 Bish. Cr. Pro. sec. 1066; Whart. Cr. Ev. sec. 333; 67 Iowa, 478; 27 N. W. 781; 81 Mo. 185; 1 Nev. 543; 5 S. E. 921; 105 Mass. 451; 107 Ill. 162; 67 Ga. 349; 29 Pa. St. 429; 46 Ark. 152; 55 *id*. 244.

HUGHES, J., (after stating the facts). It is sufficient to say that there seems, upon close examination by the court, to be no tenable objection to the instructions. They sufficiently and strongly declare the law applicable to this case.

The tenth instruction given is very vigorously assailed by the counsel for appellant in their brief, and they have supported their objections to it with much earnestness and ability. The court has given it a close and full consideration, and have reached the conclusion that it is not obnoxious to the objections urged against it. It was not improper for the court to instruct the jury, as it did in the first part of this instruction, that "the burden of showing an alibi is on the defendant, but

1. Burden of proof as to an alibi.

if, on the whole case, the testimony raises a reasonable doubt that defendant was present when the crime was committed, he should be acquitted." That this is correct seems to be well settled by a decided weight of authority. 1 Bish. Cr. Pro. sec. 1066; Whart. Cr. Ev. sec. 333; *State* v. *Fry*, 67 Ia. 478; *State* v. *Rivers*, 27 N. W. 781; *State* v. *Jennings*, 81 Mo. 185; *State* v. *Waterman*, 1 Nev. 543; *State* v. *Freeman*, 5 S. E. 921; *Commonwealth* v. *Choate*, 105 Mass. 451; *Garrity* v. *People*, 107 Ill. 162; *Ware* v. *State*, 67 Ga. 349; *Fife* v. *Commonwealth*, 29 Pa, St. 429; *McCoy* v. *State*, 46 Ark. 152; *Blankenship* v. *State*, 55 Ark. 244.

Another portion of the tenth instruction is as follows: "The jury should scrutinize the testimony of the witnesses to see if some of them may not be mistaken as to dates and times they saw the defendant, and it is proper for the jury to consider the lapse of time since such occurrence happened, and whether witnesses are likely, after such lapse of time, to be certain as to the precise time or hour they saw the defendant on the night that the shooting occurred. In other words, in arriving at their conclusion on this point, the jury should, if witnesses testify that defendant was, at the time of the shooting, at a different place from where the shooting occurred, consider whether it may not be true that the defendant may have been present at the time Geo. Black was shot, and that some of the witnesses are honestly mistaken as to the exact time they saw the defendant on the said night." Counsel for appellant urge that "this invades the province of the jury." The State has offered no evidence contradicting the witnesses who testified in behalf of the defendant as to an alibi, except that of Henson, a self-confessed murderer and assassin, and they ask what possible theory suggested to the court its right to attempt to impeach them from the bench? They say: "It is a charge upon the weight of evidence,

2. Instruction as to defense of an alibi approved.

and an expression of the court's personal views, and clearly erroneous." While this part of the instruction is strongly cautionary, when carefully considered, it will be seen that it does not intimate any opinion upon the part of the judge upon the weight of the evidence, nor does it tend to impeach or disparage the testimony introduced to prove an *alibi*, or to cast suspicion upon it.

The counsel for appellant cite, as directly in point, to support their contention, the case of *People* v. *Pearsall* (Mich), 15 N. W. 98. The reason why the court condemned the instruction in that case was, as stated by the court, that "the charge was an indirect, but evident, instruction that the people's evidence was worthy of being used, and might be used, as a standard by which to test the truth of that given on this subject on the part of the defense." The court said: "The charge isolated this testimony for the defense, and, because it was not consistent with the evidence for the people, the jury were told that they should weigh it with the other testimony to see whether the defendant's witnesses were not mistaken. This discrimination, and the ground of it, were disparaging, and it was a natural inference that the circuit judge regarded the testimony thus pointed out as suspicious."

In the case of *People* v. *Wong Ah Foo* (Cal.) 10 Pac. Rep. 375, the court gave the following charge in reference to evidence introduced to prove an alibi : "Now, in determining that fact, gentlemen, I instruct you that evidence to establish an alibi, like any other evidence, may be open to special observation. Persons may, perhaps, fabricate (it) with greater hopes of success, or less fear of punishment, than most other kinds of evidence ; and honest witnesses often mistake dates and periods of time, and identity of people seen, and other things about which they testify." On appeal, the Supreme Court of California said : "Upon a close ex-

amination of the whole charge, including the part quoted, and giving it an unrestrained interpretation, we do not perceive that the court charged the jury upon the weight of evidence. It is undoubtedly true, as a matter of fact, that untruthful witnesses may fabricate anything, and testimony of an alibi, may, perhaps, be more easily fabricated than most other kinds, and those facts are within the knowledge of most persons of ordinary understanding and experience; * * * and, viewed in the light of good sense, we do not see that the language complained of went beyond a reasonable and fair latitude of observation permissible from the judge to the jury.'"

In the case of *People* v. *Lee Gam* (Cal.) 11 Pac. Rep. 183, the jury were told in an instruction as to evidence to establish an alibi: "Still you are to scrutinize the testimony offered in the support of an alibi with care, that you may be satisfied that a fabricated defense is not being imposed upon you." On appeal, this was approved by the supreme court of California. The court instructed them, of course, that if they had a reasonable doubt on the whole case, they should acquit.

In the opinion of the court, there was testimony tending to corroborate the witness Henson, and tending to connect the defendant with the commission of the offense, and the evidence was sufficient to support the verdict of the jury.

The judgment is affirmed.

Riddick, J., being disqualified, did not participate in the determination of this cause.