## CANNON *v.* STATE.

Opinion delivered May 25, 1895.

1. *Murder—Sufficiency of indictment.*

An indictment for murder in the first degree, which alleges that the crime was committed "willfully and premeditatedly," but contains no allegation that it was committed "deliberately," and no equivalent of the omitted word, is fatally defective. *McAdams* v. *State*, 25 Ark. 405, overruled.

2. *Continuance—Refusal of, an abuse of discretion, when.*

In a murder case where defendant admits that he sought an interview with deceased, and killed him, and the question is whether defendant or deceased was the aggressor, it is error to refuse the defendant a continuance to procure the attendance of witnesses who would testify that deceased had made threats to kill defendant.

3. *Evidence—Motive.*

In such case it is also error to refuse to permit defendant to explain his motive in seeking the interview with deceased, and his and deceased's conduct on that occasion.

Appeal from Saint Francis Circuit Court.

GRANT GREEN, Jr., Judge.

*Thos. C. Trimble* for appellant.

1. The indictment does not charge murder in the first degree. Sand. & H. Dig. sec. 1644.

2. The court erred in refusing a continuance.

3. It was error to refuse to admit the testimony offered by appellant.

*E. B. Kinsworthy*, Attorney General, for appellee.

1. There was no demurrer to the indictment, and no motion in arrest of judgment. The indictment charges murder in the first degree.

2. There were no objections to the instructions.

3. There was no error in refusing the continuance. The motion does not show that appellant had made any effort whatever to procure the absent witnesses. Even if they had been present, their evidence would have been

inadmissible. The evidence of threats were not admissible. 34 Ark. 469 ; 14 So. 30 ; 22 S. W. 142 ; 26 Ark. 199 ; 13 So. 199. The court did not abuse its discretion. 54 Ark. 243.

BUNN, C. J. The appellant, James Cannon, was indicted, tried and convicted of murder in the first degree in the St. Francis circuit court, at its September term, 1894, and appealed to this court.

The crime was alleged to have been committed on the night of the 15th, he was arrested and indicted on the 20th, and trial began on the 27th, and was concluded on the 29th September, 1894. There was no demurrer to the indictment, nor motion in arrest of judgment after conviction, but counsel for defendant, in argument, contends that the indictment is not a good indictment for murder in the first degree, for which defendant was convicted, and we do not feel at liberty to ignore this plea, however irregularly it may be made. The defect in the indictment is not specifically pointed out by defendant's counsel, but, upon examination, we take it that it is that the statutory word "deliberately" is omitted ; and this leads us into an inquiry necessarily somewhat extended.

<span style="float:right">3. Sufficiency of indictment for murder.</span>

Before coming to the direct inquiry as to whether or not the omission of this word, or its equivalent, is fatal to the indictment, it is necessary first to establish the proposition that any of the words employed in the statute, or all of them taken together, are essential to be used in such an indictment, and upon this question the authorities are divided. A little authentic history of the law's dealings with the crime of murder may not be out of place in this connection.

Mr. Bishop in his work styled, "New Criminal Law,"(vol. 1, sec. 600, subdivision 2), says : "Homicides were all, at an early period, punishable with death, when committed under any of the circumstances which now make the killing either murder or manslaughter.

If, in a particular instance, it was of 'malice afore-thought,' which is now the distinguishing element of murder, it was worse in morals, not in law. Afterward the law adopted the rule of morals, by making the kill-ing murder when done of 'malice aforethought;' while, if it was without such malice, it was called by the name of manslaughter; punishing only murder with death, manslaughter less severely. Still, if the malice afore-thought with which a murder was committed was 'de-liberately premeditated,' it was in morals more aggra-vated, not in law. Of such a circumstance the law took no cognizance. At last, however, it has in most of our States taken this aggravation also into account—punishing the murder capitally only when thus aggra-vated, and ordaining a milder punishment for simple mur-der, called murder in the second degree." Thus has the application of capital punishment been narrowed and restricted at each successive step, until now it is. not to be applied unless in cases defined in the statute.

In perfect accord and keeping with these changes,. which the law on the subject has undergone from the earliest to the present times, the statutes of this State, adopted at the first session of her general assembly, after defining murder in general as it was defined at common law, after the first change noted above, then proceed to divide this crime into two degrees, in accordance with the second change of the law suggested; and in this division each of the two degrees is defined thus :

"Sec. 1644. All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration of, or in the attempt to perpetrate, arson, rape, robbery, burglary, or larceny, shall be deemed murder in the first degree."

"Sec. 1645.    All other murder shall be deemed murder in the second degree."

It will be observed that in the first clause of the section defining murder in the first degree, besides words describing specific acts, there are four qualifying words employed to define murder in the first degree, when committed otherwise than by the specific methods named, namely: "willful," "malicious," "deliberate," and "premeditated."    These denote the intent with which the killing must be done in order to make it murder in the first degree, and moreover they denote not only the moral impulse, but peculiarly the mental process through which the crime is conceived, and the act resolved upon. Of these, it may be that "willful" is common in the definitions of many crimes, and yet it may have a peculiar meaning in its application to murder in the first degree, because of its peculiar emphasis and intensity as used in such connection.   "Malicious" may in some sort be considered as synonymous with "malice aforethought," although not a perfect synonym.   In its larger sense, it is common to many crimes.   At all events, it is common to both degrees of murder, when considered as synonymous with "malice aforethought."    But the words "deliberate" and "premeditated" are peculiarly and solely descriptive of murder in the first degree.   All the authorities agree that, in order to sustain an indictment for murder in the first degree, the proof must show that the killing was done willfully, deliberately and premeditatedly, as well as in the manner descriptive of murder generally.    A majority of the American States, according to the best text writers, hold, however, that while it is essential that the proof should show the killing to have been done willfully, deliberately and premeditatedly, yet neither these words nor their equivalents are essential to make a good indictment for this crime.   Such is the rule in Massachusetts, New Hampshire, Maryland, Ala-

bama, Pennsylvania, Virginia, Maine, Connecticut, New York, Michigan, Minnesota, Colorado, Nevada, Wisconsin, Montana, Texas, Tennessee, California and Washington—19.

The main argument of the courts in all of these States to sustain their position is that the division of murder into two degrees creates no new crime, but simply fixes a punishment for each of the two grades of the one crime, or, more correctly speaking, punishes the highest grade only capitally, leaving the lower grade to be punished by imprisonment only—a punishment for any murder whatever unknown to the common law. And so these courts say it is mere matter of determining the character of the punishment, which is as much the peculiar province of the jury as is fixing the amount of punishment, which is left to the jury in all other cases where the punishment is variable.

So far as our research extends, there is only one case in which this particular question has been presented for consideration in this court, and that is the case of *McAdams* v. *State*, 25 Ark. 405. This court, in that case, adopted the rule that the statutory words need not be charged in the indictment, saying: "It is insisted that the indictment should allege that the killing was willful, deliberate, malicious and premeditated, in addition to malice aforethought. We find that the indictment alleges that the prisoner 'feloniously, willfully and of his malice aforethought, did shoot,' etc. These allegations we think sufficient to charge murder in the first degree." Proceeding further, the court in that case gives, as a reason for its position, first, that the jury, by statute, is required in all cases of murder to declare in their verdict of what degree the defendant is guilty; and secondly, that the statute does not change the common law form of the indictment; citing Massachusetts and Pennsylvania cases in support of this last proposition.

Now, if the words in question were essential to the validity of the indictment, under an indictment wherein they were employed, the person indicted could be convicted of murder in the second degree as well as of the first degree.  It is not quite clear that, even in such case, it would not be necessary for the jury to state the degree in their verdict.  In fact, if they did not, the court would be left in an awkward dilemma.  There does not seem to be very great force in that reason.  Again the court in that case cites and relies upon the several cases from Massachusetts, among them the case of *Green* v. *Commonwealth*, 12 Allen, 155.  In this· latter case the question arose in a curious way.  The indictment was a common law indictment simply, without the statutory words, as provided in that State, "deliberately premeditated malice aforethought," and yet by name for murder in the first degree.  The defendant pleaded guilty to murder in the first degree, but, when brought before the proper tribunal for sentence, raised the question that the indictment did not charge murder in the first degree ; and that, if it did, his punishment could not be fixed except by a jury on the facts in evidence.  Without adverting further to this latter contention, it was contended by the defendant that the indictment, without the statutory words of description of the crime, was in violation of the provision of the bill of rights of that State, which says :  "No subject shall be held to answer for any crime or offense until the same is fully and plainly, substantially and formally described to him."  To meet that difficulty the court said :  "The reason on which these decisions (referring to some of its antecedent decisions on the subject) were founded was this : that the statute establishing degrees of murder did not create any new offense or change the definition of murder, as it was understood at common law ; that the forms of indictment previously in use descriptive of

murder embodied every shade or degree of the crime, from that which was most aggravated, malicious and premeditated down to that which had only the element of implied malice in the most mitigated form; and that, as the offense was not changed, but only its punishment mitigated in certain cases, the indictment was sufficient to embrace every species of murder, whether it fell within one or the other degrees of homicide, as defined by statute."

We may remark, parenthetically at least, that so far as the Supreme Court of Massachusetts is concerned, its reasoning on this line may have been much strengthened by the important fact, not therein referred to, that another provision of their statutes, at the time and doubtless still in force, standing in the same connection with that dividing murder into two degrees, reads thus: "Nothing herein shall be construed to require any modification of the existing form of indictment." General Statutes, 1858, c. 154, sec. 6.

Since the only descriptive words essential to a good indictment at common law were "feloniously and with malice aforethought," it would present a case of some embarrassment to the trial court to be required to instruct the jury that if they should find that the killing was done feloniously and with malice aforethought, they should find the defendant guilty of murder in the first degree; since, under that very state of the proof, they would also be required to find him guilty of murder in the second degree.

But perhaps the ruling of that court is freed somewhat from such embarrassing possibilities, when it is remembered that the Massachusetts statute defining murder in the first degree is essentially different from ours in the language employed; for, instead of making murder in the first degree to consist of deliberate and

premeditated killing, the statute of that State has it to consist of a killing with deliberately premeditated malice aforethought.

Finally, it was said by the court in the McAdams Case that "malice aforethought and deliberation and premeditation are all synonymous terms." If this be true, it may be asked, in what sense and how far has our legislature succeeded in separating the crime of murder into two degrees, since, malice aforethought being common to both, its synonym must also be common to both?

We have shown that, by reason of differences of statutory provisions, Massachusetts' rulings cannot always be relied on as authority in this State. In Pennsylvania there is a statute which says: "It shall be sufficient in any indictment for murder to charge that the defendant did feloniously, willfully and of his malice aforethought kill and murder the deceased." Purdon's Digest, 1700–1861, sec. 20, page 253. There is a similar provision in the statutes of each of the States whose decisions are cited in support of this view, so far as we have been able to ascertain, and this provision renders these decisions unsatisfactory, at least, as authorities to us.

The foregoing is sufficient to show the reasoning upon which it is held that it is not essential to a good indictment for murder in the first degree that the statutory descriptive words be employed. Of the text writers, Mr. Wharton seems to hold to this view, although in his "Precedents" he seems to practice the other theory, without, however, confining himself to the particular words of the statute.

In Indiana, Iowa, Kansas, Ohio, and Missouri, where the statutory provisions pertaining to the subject are more nearly identical with ours, the omission of the words "deliberation" and "premeditation," and perhaps the word "willfulness," in some of their forms, is held

to be fatal to an indictment for murder in the first degree.    The prevailing idea seems to be that the division of murder into two degrees, and the defining of each, was virtually making two crimes out of one—that is to say, creating a new crime, and this change is statutory purely, although, as it stood before the division, murder was purely a common law crime.

Upon this subject that excellent author, Mr. Bishop, from whom we have already quoted, says : "If the reader will compare the form of the statute dividing murder into two degrees with the old English ones, now common law with us, dividing what was felonious homicide into the two degrees afterward known as murder and manslaughter, he will see that this early English legislation and our modern are exactly of the same sort, and they should be judicially treated exactly alike.    The statute of 23 Henry 8, c. 1, sec. 3, which originally divided felonious homicide into murder and manslaughter, did it by taking the benefit of the clergy from such as were committed of 'malice aforethought;' making them murder, and leaving the rest to be manslaughter.    In exactly the like manner did, for example, the Massachusetts statute provide that murder committed with 'deliberately premeditated malice aforethought' should be murder in the first degree, leaving all other murder not within the words 'deliberately premeditated' to be murder in the second degree.    Just as the indictment for murder was formed by incorporating into the anterior form of the indictment for a felonious homicide the words of the statute of Henry, leaving the unaltered old to remain an indictment for manslaughter ; so, in reason and sound law, should the indictment for murder in the first degree, under an American statute, like that above stated, be made out of the indictment for murder, simply by incorporating into it the statutory words, and leaving

the unaltered old to remain an indictment for murder in the second degree." Bishop, Cr. Pro. secs. 561–3.

This subject is so satisfactorily discussed in the case of *State* v. *McCormick*, 27 Iowa, 402, that we invite a careful reading of that opinion in support of the doctrine we hold. The same may be said of the reasoning in the case of *Fouts* v. *State*, 4 G. Greene (Ia.), 500. And in that State, and also in Kansas, the indictment must also charge the killing, and not merely the act which results in the killing, to have been done willfully, deliberately, and premeditatedly. See *State* v. *Watkins*, 27 Ia. 415, and *State* v. *Brown*, 21 Kas. 43. In *State* v. *Townsend*, 66 Ia. 741, it is held that words of similar import may be employed, and this accords with a statutory provision with us.

As we have stated, since the case of *McAdams* v. *State*, *supra*, as far as we can find, this court has not had this question under consideration, and yet, acting upon a sense of the fitness of things, the trial courts throughout the State (judging from the indictments in cases on appeals here) have fallen into the habit, if we may so express it, of making all their indictments show on their face the distinctive words and features of murder in the first degree, whenever and wherever that specific crime has been charged to any one ; and we think in this the trial courts have adopted the more reasonable course, voluntarily though it may be, for this theory, we think, has the merit and virtue of consistency, safety, fairness, system and uniformity.

We are of the opinion that the words of the statute peculiarly descriptive of the crime of murder in the first degree (or equivalent words) are essential to the validity of indictment for that crime, or that degree of the crime of murder, and it is always safe to employ the language of the statute.

The indictment under consideration contains the words "willfully" and "premeditatedly," but not the word "deliberately," and the particular question, now, after determining that the descriptive words should be employed, is, is the omission of the word "deliberately" supplied by the use of either or both of the other two?

Section 2088, Sandels & Hill's Digest, reads thus: "The words used in a statute to define an offense need not be strictly pursued in an indictment, but other words conveying the same meaning may be used." Now, if neither of the other two words (for there are but the three employed), nor both of them, conveys the same meaning as "deliberately," it follows that the indictment in this case is fatally defective. The authorities are, in the nature of things, not very numerous on this subject.

In *State* v. *Shelton*, 64 Ia. 333, each of the three words "willfully," "deliberately," and "premeditatedly" is held to be essential to a good indictment for murder in the first degree; and in *State* v. *Boyle*, 28 Ia. 522, the absence of the word "deliberately" in some of its forms and inflections, is held not to be supplied by the use of any or all the other words of the statute. The last named case is instructive, as it goes into a careful analysis of the words, and shows their true and accurate meaning. There can be little said to the effect that "willfully" is, in the true sense, synonymous with "deliberately." The discussions have been mainly as to the difference between "deliberately" and "premeditatedly." The prevailing opinion is that "deliberately" is the more comprehensive word, although some deny this. "Premeditation" involves more the idea of conception—revolving in mind and thinking over in the passive sense; while "deliberation," when used in such a connection as this, carries with it the idea of planning, devising, scheming and determining upon in the active

sense, and ultimately the idea of predetermined execution. It must, however, be understood always, as expressed in *Bivens* v. *State*, 11 Ark. 455, and in decisions everywhere, that "deliberation" does not involve the idea of length of time. Any amount of deliberation will suffice, if the circumstances show that there was time for reflection.

We are not entirely agreed as to this, but a majority of us are of the opinion that the indictment contains no equivalent of this omitted word, and that it is, therefore, fatally defective as an indictment for murder in the first degree.

The important consideration of a subject involving such serious consequences, is that every one put in jeopardy of his life should be notified most particularly and specifically of the charge against him, and of its nature, not only during the pendency of the proceeding against him, but before he is required to enter his plea thereto; and this can only be done in the words of the indictment.

In his motion for a continuance, defendant stated that he could prove, by one or more witnesses named in his application, that deceased had confessed, and was boasting habitually, that he had had frequent sexual intercourse with defendant's wife; that he had begun this debauchery by drugging her to accomplish his purpose, and that deceased had heard of the efforts of defendant to ascertain the truth of these statements and facts sufficient to have him indicted for rape, and consequently had become very bitter towards defendant, blaming him, as he said, for not first communicating with him on the subject; that deceased, actuated by this bitterness, had threatened defendant's life, and that these threats and other sayings of deceased had been communicated to defendant before the killing. The prosecution, it appears, had offered to admit that the witnesses named, if

2. When refusal of continuance an abuse of discretion.

present, would swear as stated in the application, and that their testimony as to the threats would be true. This proposition seems not to have been accepted by defendant at the time.

**3. Evidence held improperly excluded.** On the trial, defendant, as a witness, testified that he killed the deceased at the time and place alleged; and then offered to testify as to the antecedent facts contained in his motion for continuance. The proposition of the prosecution to admit that witnesses would swear as stated seems at this time to have been withdrawn, and on the defendant's offer to testify as to what he had heard from the witnesses aforesaid, and also that he had sought the interview with the deceased, not to·kill him, but to talk with him over their differences, in the manner seemingly demanded in the complaint of deceased as aforesaid; that, while talking over these differences, deceased became the aggressor, and assumed an attitude denoting a disposition and present ability to kill defendant, he shot and killed deceased. He also offered to explain the reason for firing the second shot. The prosecution objected to his testimony relating to antecedent facts, and as explaining his presence at the scene of the rencounter, and the relative movements and conduct of the parties·there, and the objection was sustained.

We are impressed with the notion that the supposed inadmissibility of this testimony had something to do with the refusal to grant the continuance. The fact that the defendant sought the interview seems also to have influenced the court in holding the threats and their communication to defendant inadmissible in testimony, as they furnished no defense under the circumstances.

The granting of continuances is largely in the discretion of the trial courts, and that discretion will not, ordinarily, be controlled by this court. It is our opinion, however, that the circumstances of this case are so peculiar that some injustice may have been done to the

defendant somewhere. We think that, after confessing the killing, he should have been permitted to explain his motive in seeking the interview, and his and deceased's conduct on the occasion, and since these actions of his, according to his contention, were superinduced largely by what his absent witnesses had communicated to him, it would have been well to have allowed him a better opportunity to obtain their testimony, if it was considered a necessary basis of his own, which seems to have been the case. As to the threats communicated, they were not admissible as a perfect defense; but, as a circumstance in corroboration of defendant's contention that deceased was the aggressor, they were admissible.

For the errors named the judgment is reversed, and cause remanded.

RIDDICK, J., (dissenting). I concur in the judgment of the court, but dissent from so much of the opinion as holds that the indictment in this case is insufficient to support a verdict for murder in the first degree. The only objection to the sufficiency of the indictment is the omission to charge that the killing was done "deliberately." Our statute says that an indictment must contain "a statement of the acts constituting the offense, in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended." Sec. 2090, Sand. & H. Dig.

The indictment in this case expressly charges the defendant with "murder in the first degree," and it alleges in apt words that both the assault and the killing were done "feloniously, willfully, with malice aforethought and with premeditation, etc."

In the case of McAdams v. State, 25 Ark. 415, this court held a similar indictment to be sufficient to support a verdict of murder in the first degree. The court said that "the terms malice aforethought, deliberation

and premeditation are synonymous." This ruling is supported by the decisions of most of the courts of this country. 2 Bish. Cr. Pro. sec. 584, and note 5. The same proof is required, and the rights of a defendant are in no way prejudiced by this ruling. For this reason, I believe it better to follow the rule as laid down, rather than run the risk of making the law uncertain by overturning a rule of procedure already established by the court.