RAYBURN v. STATE.

Opinion delivered March 25, 1901.

1. ALIBI—BURDEN OF PROOF.—An instruction that the burden of show-
ing an *alibi* is on the defendant, but if, on the whole case, the tes-
timony raises a reasonable doubt that the defendant was present
when the crime was committed, he should be acquitted, is not erro-
neous as shifting the burden on defendant to show his innocence.
(Page 180.)

2. CIRCUMSTANTIAL EVIDENCE—INSTRUCTION.—Where the court had in-
structed the jury that the law requires that the guilt of defendant
be established beyond a reasonable doubt, but does not require that
each circumstance in the chain of evidence be established beyond
a reasonable doubt, and defendant's counsel argued to the jury
that a chain of circumstantial evidence is no stronger than its
weakest link, it was not error for the court to give an additional
instruction to the effect that the series of facts in a case of cir-
cumstantial evidence are not as links in a chain, but as threads
or strands in a rope. (Page 181.)

3. CAUTIONARY INSTRUCTIONS—DISCRETION AS TO.—While great care
should be exercised as to the time, manner and form of giving cau-
tionary instructions, lest they make the impression on the jury
that the court has convictions on one side or the other of the con-
troversy, the discretion of the trial court will not be limited, unless
grossly abused. (Page 182.)

4. MURDER—EVIDENCE—INSTRUCTION.—Under an indictment for mur-
der alleged to have been committed with malice aforethought and
after premeditation and deliberation, the transcript showed that
the state introduced several witnesses "whose testimony tended to
show by facts and circumstances that the defendant was guilty,
as charged in the indictment, of murder in the first degree," with-
out setting out their testimony; and the court instructed the jury
that if they find that defendant, in the perpetration of, or the at-
tempt to perpetrate, the robbery of deceased, shot and killed him,
then defendant is guilty, *Held*, (1) that the instruction erred, as
proof of a murder committed in the perpetration of, or the attempt
to perpetrate, a robbery would not sustain the charge of a murder
committed with malice aforethought and after premeditation and
deliberation; (2) that it will not be presumed that the instruction
was harmless, notwithstanding the court certified that the evi-
dence tended to show "that the defendant was guilty as charged,"
as the court's instruction indicated a misconception on the court's
part as to what evidence would be sufficient to convict. (Page 184.)

S C—12

Appeal from Crawford Circuit Court.

JEPHTHA H. EVANS, Judge.

*Mechem & Bryant,* for appellant.

The sixth instruction was erroneous. 11 Ark. 456, 548, 460; Sand. & H. Dig., § 644. The indictment did not properly submit to the jury the question of appellant's guilt of murder in the first degree, committed in the perpetration of or attempt to perpetrate robbery. Sand. & H. Dig., § 2674; 26 Ark. 330; 2 Ark. 497; 1 Bish. Cr. Proc. § 589. The burden was not on appellant to show his absence at the time of the commission of the crime. 55 Ark. 248; 105 Mass. 451; 100 Mass. 487; 39 Oh. St. 315; 93 Mich. 641; 18 Neb. 154; 64 N. Car. 56; 16 Ore. 534; 47 Ala. 356; 94 Ala. 76; 72 Cal. 623; 117 Ill. 35; 40 Kans. 482; 111 Mo. 248; 87 Mo. 668; 86 Pa. St. 54; 7 S. C. 63; 30 Tex. App. 341. The ninth instruction was erroneous, in that it suggested to the jury the court's view of the value of the testimony. Const. 1874, art. 7, § 33; 49 Ark. 439; *id.* 147; 37 Ark. 590; 43 Ark. 294; 45 Ark. 172; 55 Ark. 247; 2 Th. Tr. § 2301; 34 Ark. 703; 110 U. S. 582; 65 La. 500, 511; 25 Ala. 235.

*Geo. W. Murphy, Attorney General,* for appellee.

*Mechem & Bryant,* for appellant, on motion for re-consideration.

The indictment was insufficient to charge murder in the first degree, committed in the perpetration of crime. *Cf.* 27 Ia. 402, 409; 4 Gr. 500; 21 Kans. 47; 2 Bish. New Cr. Proc. 569, 570. 573, 574, 576, 577, 579, 580, 581, 585, 588, 589; 60 Ark. 571.

WOOD, J. Appellant was convicted of murder in the first degree upon an indictment charging that he "did unlawfully, wilfully, feloniously, and of his malice aforethought, and after premeditation and deliberation, kill and murder one A. T. Carpenter," etc. The record shows that the state introduced several witnesses, "whose testimony tended to show by facts and circumstances that the defendant *was guilty as charged in the indictment* of murder in the first degree." On behalf of defendant several witnesses testified to facts tending to establish an *alibi.*

We are asked to reverse because the court gave the following instructions: "(6) If you find from the evidence beyond a reasonable doubt that defendant in the perpetration of, or in the

attempt to perpetrate, the robbery of A. T. Carpenter shot and killed Carpenter, then defendant is guilty of murder in the first degree, and you will so find. (9) The defendant in this case does not set up justification, but he undertakes to show that at the time that Carpenter was killed he, the defendant, was not at the place where such killing occurred, but at another place, and that therefore he was not connected with or implicated in such crime. The burden of showing an *alibi* is on the defendant, but if on the whole case the testimony raises a reasonable doubt that the defendant was present when the crime was committed, he should be acquitted; but the jury should scrutinize the testimony of witnesses to see if some of them may or may not be mistaken as to dates and times when they saw the defendant, and it is proper for the jury to consider the lapse of time since the occurrence happened, and whether witnesses are likely or not likely after such lapse of time to be accurate as to the precise time or hour that they saw defendant on the night the shooting occurred. In other words, in arriving at your conclusion on this point, the jury should consider whether it may or may not be true that defendant was present at the time and place Carpenter was shot, and that some of the witnesses are honestly mistaken as to the exact time they saw defendant upon the evening and night of November 3, 1900."

1. The indictment was good for murder in the first degree. It was not necessary for it to set forth the facts and circumstances constituting the crime. That was matter of proof. Any proof which showed the defendant to be guilty of murder in the first degree, as defined by our statute, was competent. It was not necessary to charge specifically in the indictment that the murder was committed in the attempt to perpetrate robbery, in order to admit proof of that fact. *State* v. *Johnson,* 72 Ia. 393-400; *Com.* v. *Flanagan,* 7. Watts & S. 415; *State* v. *Hopkirk,* 84 Mo. 278; 10 Enc. Pl. & Pr. 150; *People* v. *Giblin,* 115 N. Y. 196, 4 L. R. A. 757.

The record shows affirmatively that the facts and circumstances tended "*to prove the murder as charged in the indictment.*" In the absence of any proof tending to show that the homicide, although committed in the attempt to perpetrate robbery, was unintentional, it must be held that it was as stated to be shown in the record. The court's charge, so far as the record shows, was but based upon the proof.

2. Instruction 9 is a literal copy of an instruction approved by this court in *Ware* v. *State,* 59 Ark. 379. That case was well considered, and the conclusion we then reached was sound. Learned counsel for appellant, we think, misapprehend the purport of the instruction. It does not shift the burden upon the defendant to prove his innocence. The burden is still upon the state to prove beyond a reasonable doubt upon the evidence in the whole case (which would include evidence of *alibi*) that the defendant was present when the crime was committed.

In *Com.* v. *Choate,* 105 Mass. 456, the court passed upon an instruction which told the jury "that where the defendant sought to establish the fact that he was at a particular place at any given time, and wished them to take it as an affirmative fact proved, the burden of proof was upon him, and if he failed in maintaining that burden, the jury could not consider it as a fact proved in the case; that the burden, however, was upon the government to show that the defendant was present at the time of the commission of the offence, and as bearing upon that question the jury were to consider all the evidence offered by the defendant tending to prove an *alibi,* and if upon all the evidence the jury entertained a reasonable doubt as to the presence of the defendant at the fire, they were to acquit." The court said of this: "The substance of the whole ruling was that if the evidence of the defendant which tended to prove an *alibi* was such that, taken together with the other evidence, the jury were left in reasonable doubt as to whether the defendant was present at the alleged fire, they should acquit him." The instruction in the form given in the Massachusetts case is perhaps a preferable statement of the law. But the instruction under consideration, fairly construed, is of exactly the same purport. The burden to show the defendant's presence and participation in the crime is still upon the state, when the evidence is considered as a whole, including that introduced by the defendant on the question of *alibi.* But, as to the particular defense of *alibi* set up under the general plea of not guilty, the defendant, if he relies upon it as an affirmative fact, must show that particular fact. The state could not be expected to prove that he was not present. That would be to devolve upon the state the duty of proving a negative; *i. e.* that defendant was not present, and not guilty. The state must prove its charge—the guilt of the accused—beyond a reasonable doubt, notwithstanding the testimony tending to prove an *alibi,* or the defendant must be acquitted; but it is the

province of the defendant to introduce evidence tending to show an *alibi* when relied on as an affirmative matter of defense, and as to this the burden rests upon him.

3.  The court also gave the following:  "(13) The law requires that the guilt of the defendant shall be established to your satisfaction beyond a reasonable doubt before you can convict him, but it does not require that each circumstance in the chain of evidence shall be established to your satisfaction beyond a reasonable doubt.   It is sufficient if, on the whole case, you are satisfied beyond a reasonable doubt, although the individual circumstances may not themselves be so established."

During the argument to the jury of J. C. Byers, of counsel for defendant, he said in substance: "This is a case depending on a chain of circumstantial evidence.   No chain is stronger than its weakest link.   If any link in this chain is weak or broken by the evidence of the defendant, then the entire chain is broken and destroyed, and you should acquit the defendant."   After this statement of counsel, and while he was addressing the jury, the court prepared, and, after counsel for defendant concluded his address, gave in writing, instruction marked "A," as follows:

"A.   We often speak of a chain of circumstantial evidence. This is an expression used in these instructions, and found in the law books.   It is a metaphor used to convey an idea.   It is not strictly accurate.   It is more accurate to speak of the series of facts given in evidence in a circumstantial evidence case not as links in a chain, but as threads or strands making a rope or cord of evidence.   The individual fibers may be of very small strength, in themselves unable to sustain any weight of consquence, but when sufficiently numerous, and properly intertwined with others of like kind, may make the strongest cordage—cordage sufficient to hold the largest ship in a great storm.   Gentlemen, it is for you in this case to declare whether or not the fibers of evidence are sufficiently numerous and properly arranged with their fellows to unescapingly bind together the defendant and his guilt of the charge against him."

The court offered to allow defendant's counsel further time to address the jury on the instruction.

The court having used a metaphor to characterize the evidence, counsel for appellant seized upon this in argument, and by literal adherence to it was perverting the well-established rule that each circumstance in cases of circumstantial evidence does not

have to be proved beyond a reasonable doubt, it being sufficient if, upon the whole case, the evidence convinces the jury beyond a reasonable doubt. Thus the argument of counsel was inconsistent with the principle which the court had correctly announced in the same instruction in which the inaccurate metaphor was used. In order, therefore, that the jury might not get an erroneous impression of the force and effect to be given circumstantial evidence, both from the prior inaccurate statement of the court and the argument of counsel, it was exceedingly appropriate that the court explain and correct its charge. In doing so the court thought it proper to use another metaphor, and this time one approved by text writers as an apt illustration and designation of circumstantial evidence. Wills, Cir. Ev. 279. It was certainly not incumbent upon the presiding judge to use metaphorical language to set forth the simple and well-settled rules of the law, and we would not be understood as approving as a precedent the instruction given by the court. The writer is of the opinion that the plain principles of the law are best declared to the ordinary jury in our terse English, unadorned by figures of speech or flowers of rhetoric. This, however, is a matter of taste. The mere form and verbiage of an instruction cannot be considered as prejudicial and reversible error, so long as no erroneous principle of law is announced, and so long as the instruction is free from an expression of opinion on the facts, and is not calculated to confuse or mislead the jury.

The latter part of the ninth, *supra,* and instruction "B" given after the close of the argument, were cautionary. Such instructions are within the sound discretion of the presiding judge. Great care should be exercised as to the time, manner, and form of giving such instructions, lest they make the impression on the jury that the court has convictions on one side or the other of the controversy, and subject the judge to the suspicion of holding an uneven balance in the cause. Circumstances and occasions do frequently arise, however, when cautionary instructions, drawn in proper form, given at the proper time, and in the proper manner, are important and necessary. The discretion of the trial judge will not be limited in these matters, unless it has been grossly abused to the prejudice of the accused. We cannot say that the court abused its discretion in this case.

Finding no reversible error, the judgment is affirmed.

BUNN, C. J., (dissenting). This is a case in which we are not favored with the evidence on the part of the state, except that it

is stated in the record that the state's evidence tended to show that the defendant was present, and committed the homicide. The evidence as to the robbery is wanting. On his plea of *alibi* the defendant made out what must be regarded as a strong case. I do not concur in the opinion of the other judges that errors as to the exact time may account for the difference in the testimony of unimpeached witnesses. They all were positive as to the time they saw the defendant in Fort Smith, and this particular time was as definitely settled by the testimony for the state as the time when the homicide was committed.

When the attorney for the defendant was arguing the case of his client before the jury, by way of illustrating the force and effect of the evidence, he stated that this was a case of circumstantial evidence, and that such a case is based upon a chain of circumstances, which chain is no stronger than its weakest link. At this point he was interrupted by the presiding judge, who proceded to address the jury, in which he said substantially that the metaphor of defendant's counsel was not the correct one to use in such a connection, but that the proper metaphor is that a case of circumstantial evidence depends not on a chain of circumstances, but that it is like a rope composed of many strands twisted together, of which one or more strands might break, and yet the rope be not broken. An advocate must be allowed to make use of tropes and metaphors and other figures of speech according to his taste, so he does not misstate the evidence. This manner of presenting the facts is but arguing upon the facts, and the jury must be the judges of the appropriateness of the figures of speech. Where the court undertook to correct the attorney in this matter, it was but making an argument in answer to his, and commenting on the testimony, and determining its weight by his metaphor, which the jury, in their loyalty to the authority of the court, naturally took to be as adding strength to the circumstantial evidence upon which the state relied to make out her case, as more authoritative than the metaphor of defendant's counsel, which tended to weaken the force of circumstantial evidence.

In a case like this, hanging in the balance as it were, it is impossible to imagine, even, the degree of unfairness this was to the defendant.

The judgment should have been reversed.

ON REHEARING.

Opinion delivered June 1, 1901.

BATTLE, J. We are asked by the appellant to reconsider what we have said in a former opinion in this cause in reference to the following instruction: "If you find from the evidence beyond a reasonable doubt that defendant, in the perpetration of, or in the attempt to perpetrate, the robbery of A. T. Carpenter, shot and killed Carpenter, then defendant is guilty of murder in the first degree, and you will so find."

·This instruction was given in a trial upon an indictment in the words and figures following: "The grand jury of Crawford county, in the name and by the authority of the state of Arkansas, accuse Love Rayburn of the crime of murder in the first degree, committed as follows: The said Love Rayburn, on the 3d day of November, 1900, in the county of Crawford aforesaid, did unlawfully, wilfully, feloniously, and of his malice aforethought, and after premeditation and deliberation, kill and murder one A. T. Carpenter with a certain pistol, which he, the said Love Rayburn, then and there had and held in his hands, the said pistol being then and there loaded with gunpowder and leaden bullets, against the peace and dignity of the state of Arkansas."

The statutes upon which this indictment was based are as follows: "Murder is the unlawful killing of a human being, in the peace of the state, with malice aforethought, either express or implied." "All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration of, or in the attempt to perpetrate, arson, rape, robbery, burglary or larceny, shall be deemed murder in the first degree." Sand. & H. Dig., §§ 1639, 1644.

According to these statutes two classes of murder constitute murder in the first degree, to-wit: (1) All murder committed by any kind of willful, deliberate, malicious and premeditated killing; and (2) all murder which shall be committed in the perpetration of, or in the attempt to perpetrate, arson, rape, robbery, burglary or larceny.

In *Cannon* v. *State,* 60 Ark. 564, this court held that it is essential to the validity of an indictment for the first class of murder in the first degree to use the words "willful," "deliberate," "malicious," "premeditated," or equivalent words, in charging the

offense. The reason for the ruling is, these words are descriptive of the elements necessary to constitute that class of murder. For the same reason it is necessary to allege that the killing was done in the perpetration of, or in the attempt to perpetrate, one of the felonies named in the statutes quoted, in order to charge the second class of murder in the first degree. These two classes of murder in the first degree are separate and distinct. In the former a precedent intent to kill is necessary to constitute the offense, while in the latter it is not. While the former may be committed in the perpetration of, or attempt to perpetrate, the felonies named, an indictment for the same will not always include the latter; and when it does, it is only because the essentials necessary to constitute the former exist. The perpetration of or attempt to perpetrate, a felony necessary to constitute the second class is not equivalent to the premeditation, deliberation and intent necessary to constitute the first, except in effect. They raise the killing to the grade of that in the first class, but the allegations necessary to charge murder in the first degree in the first class are not equivalent to those necessary to charge the offense in the second. Hence an indictment which charges only the offense in the first class will not be sufficient to accuse the defendant of murder committed in the perpetration of, or in the attempt to perpetrate, one of the felonies named in the statute, unless it is committed with the intent to kill, and after premeditation and deliberation. In support of this conclusion we cite *Cannon* v. *State,* 60 Ark. 564, and the cases and authorities cited in the same.

A defendant cannot be lawfully convicted of a crime with which he is not charged in the indictment against him. Some courts have held that he can be convicted of murder committed in the perpetration of, or in the attempt to perpetrate, the felonies named in the statute, under a common-law indictment for murder. But they do so because they hold that the law dividing murder into two degrees introduced no change in the form of the indictment, created no new offense, and only reduced the punishment for one of the degrees. We disapproved of this view in *Cannon* v. *State,* 60 Ark. 564, and held that it did make a change in the form of the indictment.

It follows, the instruction should not have been given. Was it prejudicial? The evidence adduced by the state to sustain the indictment is not set out in the bill of exceptions. But it is stated in the bill of exceptions that the state "introduced several witnesses

whose testimony tended to show, by facts and circumstances detailed by them, that the defendant was guilty, as charged in the indictment, of murder in the first degree." But this is a statement of the court, and necessarily means that the evidence adduced tended to show that the defendant was guilty as charged in the indictment, under the instructions of the court, for they (instructions) indicate what the court considered sufficient to convict. In the absence of a contrary showing, the giving of an instruction indicates that the court was of the opinion that the evidence warranted the giving of it. We therefore think that the record shows that the instruction was prejudicial.

Reversed and remanded for a new trial.

WOOD and RIDDICK, JJ., dissent.

WOOD, J. The error of the trial court is not shown. If the murder was deliberate, although in an attempt to commit robbery, the indictment was sufficient. There could not possibly be any prejudice if the proof all showed that the killing was deliberate. We must presume, until the contrary appears, that the charge of the court contained in the sixth instruction was based upon the evidence. As the indictment charges a deliberate killing, the presumption is the court would not have given instruction six had there been any proof whatever that the killing in an attempt to commit robbery was unintentional.