HENRY *v*. STATE.

Opinion delivered February 13, 1922.

1. CRIMINAL LAW—ADMISSIBILITY OF CONFESSION.—A confession made by the accused was not rendered incompetent by the fact that accused was not previously warned that it might be used against him, nor by the fact that the officer to whom it was made stated, after it was made, that under certain circumstances it might be lighter on the accused.

2. HOMICIDE—MURDER IN ATTEMPT TO ROB—INSTRUCTION.—Where an indictment for murder charged that the offense was committed in an attempt to rob deceased, an instruction that if defendant, in an attempt by defendant or by defendant and another to rob deceased, shot and killed him, the jury should find him guilty of murder in the first degree, was correct, as no other offense was charged than murder in the first degree.

3. HOMICIDE—CONSPIRACY TO ROB—LIABILITY FOR KILLING.—An instruction that if defendant and some other person conspired to rob deceased, and in carrying out such purpose the other shot and killed deceased, and defendant was present at the same for the purpose of aiding in the robbery, then the defendant would be guilty as if he had fired the shot, even though the original design or purpose of the conspirators did not contemplate killing deceased, *held* correct.

4. HOMICIDE—VARIANCE BETWEEN INDICTMENT AND PROOF.—There is no variance between an indictment alleging that accused killed deceased in an attempt by him and another to rob deceased and proof that the killing was done by another who was jointly engaged with defendant in the attempt to rob deceased.

5. CRIMINAL LAW—INSTRUCTION AS TO CONFESSION.—Where the court admitted evidence of a confession by defendant, though the evidence would have justified a finding that it was procured by coercion or duress, it was error to refuse to instruct the jury that the alleged confession, to be competent, must have been

freely and voluntarily given without duress or promise of leniency, and that the jury could consider all of the circumstances and give it such weight as they think proper.

Appeal from Garland Circuit Court; *Scott Wood.* Judge; reversed.

*S. W. Garratt* and *Wm. G. Bouic,* for appellant.

Confessions must be considered in their entireties. 69 Ark. 599. Confession should not be received unless voluntarily made. 50 Ark. 501. Where improper influence has been used to obtain a confession, it will be presumed that the confession flows from that influence. 109 Ark. 322.

The court erred in instructing the jury that by reason of the fact that the indictment alleged that the killing was done in the attempt to rob, the only verdict that could be rendered was murder in the first degree or acquittal. 69 Ark. 107.

Instruction No. 3 should not have been given; it was not in keeping with the law. 58 Ark. 47; 104 Ark. 245.

The court erred in refusing to give the instruction asked by defendant, dealing with the confession. 107 Ark. 568.

*J. S. Utley,* Attorney General; *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

The confession was voluntarily made. 34 Ark. 649. Whether or not the confession was voluntarily made was a question for the trial court, and his findings will not be disturbed unless it appears that he abused his discretion. 74 Ark. 397; 107 Ark. 568; 94 Ark. 343; 99 Ark. 453.

A confession made without caution to the accused that it might be used against him, is not incompetent unless invalidated by statute. 107 Ark. 568; 114 Ark. 472; *Logan* v. *State,* 150 Ark. 486.

If the defendant was guilty at all under the indictment, he was guilty of murder in the first degree. C. & M. Digest, § 2343.

Under the indictment and evidence it was proper for the court to refuse to instruct the jury on murder in the second degree.  88 Ark. 447; 36 Ark. 284; 50 Ark. 506; 52 Ark. 345.

It was not error for the court to instruct the jury that all persons present aiding and abetting or ready and consenting to aid and abet in the commission of a felony should be deemed principals, and indicted and punished as such.  C. & M. Dig., sec. 2311; 58 Ark. 47; 10 Ore. 505; 149 Ill. 612; 90 Mo. 220; 11 Cush. 428.

Defendant did not request an instruction on circumstantial evidence, and it is too late to complain now.  89 Ark. 300; 110 Ark. 567; 129 Ark. 324.

McCulloch, C. J.  Defendant was convicted under an indictment charging murder in the first degree in the killing of one Aaron Dill with intent to rob.  The language of the indictment (omitting the caption and formal part) is that the accused "did unlawfully, wilfully, feloniously and with malice aforethought, and after deliberation and premeditation and with a felonious intent then and there to rob Aaron Dill, did assault, kill and murder the said Aaron Dill by shooting him, the said Aaron Dill, with a certain gun, which he, the said Ezekiel Henry, then and there held in his hands, the said gun being then and there loaded with gunpowder and bullet, against the peace and dignity of the State of Arkansas."

Dill was found dead in the city of Hot Springs, on a street near his home, on a certain Sunday night about 7:30 o'clock.  His death resulted from a bullet wound in the right temple.  The body was found in a few moments after he was shot, several witnesses having heard the shot fired.  He was lying on his back, and the officer who first examined the body found a .45 caliber pistol inside of his vest, and his right hand was extended in under his vest.  The lighted stump of a cigar found in his hand indicated that he was smoking at the time, and his clothing was burned by the lighted cigar, which was not entirely extinquished when the officer examined the body.

One witness testified that she lived close to Dill's home, that she heard the shots fired about 7:30 o'clock and saw two men running from the scene of the shooting; that the men separated, one going up Palmetto Street and the other going up Grove Street. Another witness living nearby testified about hearing the shooting and then seeing two men running from the spot immediately after the shooting. Neither of these witnesses could identify either of the persons that they saw running from the scene of the killing. Another witness, Bell by name, testified that he was acquainted with appellant, and that on the night of the killing he met appellant and another man on the street close to the spot where Dill was killed and recognized appellant, and that shortly afterwards he heard the report of a gun, and then saw appellant and the other man running from that direction. This witness gave a description of the manner in which appellant and his companion were dressed. Still another witness testified that she saw two men answering the description given by Bell running from the scene of the killing immediately after the shot was fired. This witness stated that she was not personally acquainted with appellant, but she described the manner in which appellant was clothed, and said that she knew that he was a man commonly called "Zeik,"—appellant's name being Ezekiel.

The State then proved by William Brandenburg, the city detective, a confession by appellant made to him, and the confession was introduced in evidence over the objection of appellant's counsel. In this confession, which had been reduced to writing by a stenographer and which was elicited by questions propounded, appellant stated, in substance, that just before the killing of Dill he went to the home of John Davis, and that Davis there made a proposition to him that they would go out together and "get some jack," to which offer he finally acceded; that he and Davis walked down a certain street together and met Dill, and that Davis commanded Dill to "hands up." He stated that he (appellant) then started to run away,

and as he did so he heard the shot fired. He testified that Davis had a .45 caliber pistol, which he carried when he left home.

The principal ground urged for the reversal of the judgment is that the confession of appellant was obtained by promises made to him by witness Brandenburg, and that it should have been excluded.

Before introducing the confession, Brandenburg was examined and cross-examined concerning the circumstances and conversation which led up to the confession. He testified that he took appellant to the office of the chief of police and remained in the room with him, holding appellant's hand. He stated that he used no violence, and was merely holding appellant's hand in an affectionate way, and that in this attitude they talked together for a considerable time, and that appellant broke down and told the whole story about his participation in the killing of Dill. Brandenburg was asked the direct question whether or not he had used any violence or threat or any kind of a promise to obtain the statement from appellant, and he replied that he had not done either of those things, but that, after appellant had made the confession, he said to apellant that if they caught the other man (Davis) and it was proved that Davis committed the crime, it might be lighter on him (appellant). Brandenburg was positive in his statement that this was said to appellant after he had made the confession

The appellant did not testify, and no other testimony was introduced as to the confession.

We think that under the circumstances the court was justified in permitting the confession to go to the jury. The fact that appellant was not previously warned of its use against him did not render the confession incompetent. *Greenwood* v. *State*, 107 Ark. 568; *Dewein* v. *State*, 114 Ark. 472; *Logan* v. *State*, 150 Ark. 486. Nor was the alleged confession rendered incompetent by the fact that the officer to whom it was made stated, after it was made, that under certain circumstances it might be lighter on ap-

pellant. The confession being already made, it was competent as proof of appellant's guilt, and nothing which thereafter occurred could have rendered it incompetent.

It is next contended that the court erred in giving the following instruction:

"If you believe from the evidence in this case beyond a reasonable doubt that the defendant in Garland County, Arkansas, in an attempt made by the defendant, or the defendant and some other person acting together, to rob the deceased, Aaron Dill, shot and killed the said Aaron Dill with a pistol or gun, then you should find the defendant guilty of murder in the first degree."

The indictment in this case was preferred under the statute (Crawford & Moses' Digest, § 2343) which declares that murder "committed in the perpetration of, or in the attempt to perpetrate, arson, rape, robbery, burglary or larceny shall be deemed murder in the first degree." In *Rayburn* v. *State*, 69 Ark. 177, the court held that under an indictment charging the crime of murder committed by an act of wilful, deliberate, malicious and premeditated killing, without charging that the killing was done in the perpetration, or in the attempt to perpetrate, one of the felonies mentioned in the statute, there could be no conviction of murder in the first degree without proof of the elements of the crime charged in the indictment, and that the giving of an instruction identical with the one quoted above was erroneous and prejudicial. In the present case, however, it will be observed that the indictment charges the commission of the offense in the attempted perpetration of the crime of robbery, and, as held in the Rayburn case, *supra,* this of itself constitutes murder in the first degree without proof of the other elements mentioned in the statute. In other words, the statute itself makes homicide committed in the perpetration of, or the attempt to perpetrate, one of the felonies mentioned, murder in the first degree, and the court was correct in so declaring the law to the jury. Under the indictment, no other offense was charged than

murder in the first degree, and, unless the proof was sufficient to establish that degree of homicide, the accused was entitled to an acquittal.

Again, it is urged that the court erred in giving the following instruction:

"If you believe from the evidence beyond a reasonable doubt that the defendant and some other person conspired together to rob some person, and pursuant to such conspiracy or agreement the defendant and such other person held up Aaron Dill in Garland County, and such other person commanded Dill to throw up his hands, and in carrying out the purpose of robbery such other person shot and killed Dill, and at the time Dill was killed the defendant was present at the scene of the killing for the purpose of aiding in the robbery or attempt to rob the said Dill, then the defendant would be guilty the same as if he himself had fired the shot. This would be true, even though the original design or purpose of the defendant and such other person did not contemplate the killing of Dill or any other person."

This instruction was correct under the law as declared by this court in *Carpenter* v. *State,* 62 Ark. 286, and *Hunter* v. *State,* 104 Ark. 245. Under our statute, the appellant was properly indicted as a principal, he being present, aiding and abetting, and, even though the indictment charged that he did the killing, there was no variance by the proof that the killing was done by another who was jointly engaged with the appellant in the enterprise. This was true, even though the conspiracy did not expressly contemplate the commission of the crime of murder. The court, in another instruction, told the jury that if appellant did not intend to rob Dill or to aid Davis in the robbery, he would not be guilty under the indictment.

Instruction No. 3 was along the same line, and, though objected to by appellant's counsel, we find that it was a correct declaration of the law.

Error of the court is assigned in refusing to give a requested instruction telling the jury that the alleged confession of appellant, in order to be competent, must have been freely and voluntarily given, without duress or promise of leniency, and that the jury could "consider all of the circumstances surrounding the party at the time the confession is made and give it such weight as you think proper under all the circumstances." This instruction was refused, and the court did not give any other instruction on that subject. We are of the opinion that appellant was, under the state of the proof presented in the record, entitled to an instruction submitting to the jury the question whether or not the confession was freely and voluntarily given, without any coercion or promises of leniency. The officer who received the confession testified positively that he did not coerce appellant in any way, and that he did not hold out to him any hope of leniency or reward until after the confession was given. Still the jury might have found, under the circumstances, that there was a degree of coercion or duress which influenced appellant to such an extent as to render his confession incompetent evidence against himself. The testimony of the officer on this subject appears in the record as follows:

Q. After he had told you about it you told him if you caught Davis and it was proven that Davis did it, it might be light on him?

A. I did.

Q. Did you, or not, make him any promises or say anything to him that would indicate to him that it would be lighter on him, or that he would receive reward, or that he would be punished, or threaten him in any way or do any violence to him to get him to confess to you?

A. Just as I stated, the only thing with regard to Davis.

Q. Just answer that question yes or no?

A. No.

Q. Well, how did you get him to confess?

A. I talked to him.

Q.  Did you hold him by the hand as Sullivan said?

A.  Yes.

Q.  How were you holding his hand?

A.  I just had hold of it.

Q.  What did he do, how did you get him to do it?

A.  Well, I talked to him, and he finally broke down.

Q.  Did you talk to him religiously, violently, or how?

A.  I guess you would call it religiously.

Q.  Mr. Brandenburg, tell the jury how it happened.

A.  That is all. I talked to him, and he broke down and commenced crying and telling me about it after I was talking to him about an hour or two hours.

Q.  Did he cry?

A.  Yes.

Q.  How were you holding his hand, violently or affectionately?

A.  Well, affectionately, I guess.

Q.  You were not trying to kill the negro?

A.  No, I wasn't.

Mr. Sullivan, the chief of police, testified that he walked into the office and found Brandenburg and appellant seated near a table with Brandenburg holding appellant's hand, and that appellant was crying and telling Brandenburg about the killing. The following questions propounded to the witness, and his answers, appear in the record:

Q.  How did he have him by the hand, in a violent way or in an affectionate way?

A.  More in an affectionate way.

Q.  Were they good friends and seemed to be confessing to a friend?

A.  Yes.

The testimony was sufficient to justify the court in admitting it and in submitting it to the jury, but appellant, as before stated, had the right to have the jury consider the question whether or not it was a confes-

sion voluntarily made, and the court erred in refusing to submit that question to the jury. *Shufflin* v. *State,* 122 Ark. 606; *Thomas* v. *State,* 125 Ark. 267.

For this error the judgment will be reversed, and the cause remanded for a new trial.