LESIEURS v. STATE.

Opinion delivered February 22, 1926.

1. CONSPIRACY—SUFFICIENCY OF EVIDENCE.—In a prosecution for murder, evidence of a conspiracy between accused and another to kill deceased *held* sufficient to admit evidence of what each of the conspirators did towards carrying out their common design.

2. CONSPIRACY—ADMISSIBILITY OF EVIDENCE.—Any act done or declaration made by one of two conspirators in furtherance of the conspiracy, though in the other's absence, may be shown in evidence against the other.

3. CONSPIRACY—STATEMENTS OF CONSPIRATOR.—Statements of a fellow conspirator, made in defendant's absence, immediately after defendant killed deceased, and when the attendant circumstances show that the criminal enterprise was not ended, were admis-

sible as part of the unlawful enterprise, where they tended to explain the connection and joint action of the conspirators in the premises.

4. CRIMINAL LAW—SEPARATION OF JURY—PREJUDICE.—Where, in a murder case, the court first told the jurors that they would be allowed to separate, but afterwards directed that they be kept together, the ruling of the court will not be reviewed if it does not appear that prejudice to defendant resulted, or if no objection to the ruling was saved.

Appeal from Poinsett Circuit Court; *W. W. Bandy,* Judge; affirmed.

*J. T. Kelley, Marvin Watkins* and *Denver L. Dudley,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

HART, J. Fred Lesieurs was indicted for murder in the first degree charged to have been committed by shooting Tom Russ. The jury found the defendant guilty of murder in the first degree, as charged in the indictment, and fixed his punishment at life imprisonment in the State Penitentiary. To reverse the judgment and sentence imposed upon him, the defendant has duly prosecuted an appeal to this court.

According to the undisputed evidence, Fred Lesieurs shot Tom Russ with a pistol in the town of Truman, Poinsett County, Arkansas, in July, 1925, and Russ died as the result of his wounds in a very short time. The killing occurred on the main street of the town, between six and seven o'clock in the evening, and several persons witnessed the killing. One of the witnesses for the State lived about three and a half miles from Truman, and testified that on the day of the killing Fred Lesieurs and Crip Martin came to her house in a Ford car, and Lesieurs had a pistol lying in the seat by his side. She did not remember how long they stayed.

Another witness for the State testified that immediately before the shooting she saw the defendant walking down the sidewalk at a medium gait. When he was about fifteen feet from the place of business where Crip Mar-

tin stayed, she heard the latter say in substance: "They are going to fight." She did not know who first started the shooting. She turned around after the first shot, and saw Russ and Lesieurs both shoot. When Russ fell, Lesieurs hit him over the head with a pistol once or twice. When cross-examined, the witness stated that she had no idea whom he meant when she heard Crip Martin say, "They are going to fight." When he made the remark Martin was looking in the direction that Lesieurs was going, and Lesieurs was going to the place where he and Russ commenced shooting at each other.

According to the testimony of other witnesses for the State, Fred Lesieurs came to where R. H. Martin, Wert Criss, and Tom Russ were standing talking. He pushed R. H. Martin out of his way, and Russ then raised his hand and said to Lesieurs, "Don't start anything." Lesieurs then shot Tom Russ twice with his pistol, and Russ then commenced to shoot at Lesieurs. Tom Russ sank down on the ground, and then Lesieurs shot him twice more. Russ got up, and Lesieurs hit him twice on the head with his pistol. After Lesieurs had shot at Russ two times, the latter said, "Don't shoot me any more; you have killed me." Lesieurs shot at him twice more, and took Russ' gun out of his hand and threw it on the sidewalk.

Ty Luttrell was one of the principal witnesses for the State. According to his testimony, he saw Fred Lesieurs walking pretty fast down the street, unbuttoning his shirt. Lesieurs walked up to where R. H. Martin, Wert Criss and Tom Russ were talking, at the edge of the sidewalk. Lesieurs pushed Martin out of the way, and Russ began to back away, saying, "Don't do that; Fred, don't do anything." Lesieurs shot twice with his pistol at Russ, and the latter kept backing away. After Lesieurs had fired twice at him, Russ pulled his gun and fired two shots at Lesieurs and Lesieurs then shot at Russ. He turned to run, and Lesieurs shot at him again. Russ crumpled up and fell to the ground, and it was

then that he said, "Don't shoot me any more; you have killed me." Lesieurs replied, "By God, I aimed to." Lesieurs then changed ends with his pistol, and started hitting Russ. A short time before the witness saw the defendant coming up the street unbuttoning his shirt, he saw him and Crip Martin coming along the street in a Ford car, and, as they passed the place where Russ and the other men were standing talking, Crip Martin pointed over that way. They then stopped the car before the business house where Crip Martin worked, and Lesieurs started towards where Russ and the other men were. Crip Martin called him back. Lesieurs went back into Crip's place, and when he came back out he went down towards the place where the shooting occurred. After the shooting started he heard Crip Martin hollering up at his place. After the defendant had been arrested by a deputy marshal and his pistol taken from him, Crip Martin said that it was his gun, and that he was going to stay with the defendant. While the shooting was going on, he heard Crip Martin hollering, "Shoot him," or "Kill him."

According to the testimony of Mrs. Jewell Russ, she heard Fred Lesieurs make threats against her husband on the 8th day of March preceding the killing, after they had had a fight. She communicated these threats to her husband.

According to some of the witnesses for the defendant, Tom Russ commenced shooting first, and after he had shot at Fred Lesieurs once or twice, the latter commenced shooting at him. Some of the witnesses for the defendant testified that they did not hear Tom Russ call out during the shooting, "Don't shoot me; you have killed me," and they did not hear the defendant say that is what he intended to do when Russ told him not to shoot any more, that he had killed him.

The jury were the judges of the credibility of the witnesses, and from its verdict it evidently believed the testimony of the witnesses for the State. The evidence

for the State was sufficient to warrant a verdict of guilty of murder in the first degree. Viewed in the light most favorable to the State, it tended to show that the defendant had formed the design to kill the deceased, and walked to where he was standing talking with two other men for that purpose. He pushed one of the men out of the way and shot at the deceased twice before the latter pulled out his pistol and fired at him. After the deceased had told the defendant not to shoot at him any more, that he had already killed him, the latter replied with an oath that this was what he intended to do. He hit the deceased once or twice over the head with his pistol after he had mortally wounded him by shooting him with it.

One of the witnesses for the State testified that there were four bullet wounds in the body of the deceased, and that one of them was in his back. His skull appeared to be crushed. Another witness testified that the skull of the deceased was crushed in, and that there was a gash you could lay your finger in.

The pistol used by the defendant was a 38-caliber Smith & Wesson, and that by the deceased a 32-20 caliber.

It is not contended by counsel for the defendant that the evidence is not sufficient to support the verdict. Their chief reliance for a reversal of the judgment is that the court erred in allowing to go to the jury certain evidence in regard to a conspiracy between the defendant and Crip Martin to kill the deceased, and in instructing the jury that they could consider this evidence. In the first place, it is contended that the evidence is not sufficient to show any conspiracy between the defendant and Crip Martin to kill the deceased. We cannot agree with counsel in this contention. On the day of the killing the defendant and Crip Martin drove out into the country about three and a half or four miles from Truman, about one o'clock in the afternoon, and stayed there for some time. The defendant had a pistol on the seat by his side.

A short time before the killing they were seen to drive a Ford car past the place where the killing occurred, and where Russ was standing talking to two other men. As the car passed this place, Crip Martin pointed over towards it. When they reached Crip Martin's place of business, the defendant got out and started down towards the place where Russ was talking to the other men. Crip Martin called him back, and they went into Martin's place of business together. The defendant came out of Martin's place of business and again started towards the group of men in which Russ was standing. When the shooting started, Crip Martin was on the outside of his store, and commenced to hollo, "Shoot him" or "Kill him." Immediately after the shooting, a deputy town marshal arrested the defendant and took away from him the gun with which he did the shooting. Crip Martin's father was trying to get him back into the store, and Crip Martin stated that he was going to stay with the defendant, and asked the deputy marshal to turn the pistol over to him, saying that it belonged to him. This testimony was sufficient to show that there was a conspiracy between the defendant and Crip Martin to kill the deceased, and the evidence of what each of the conspirators did towards carrying out their common design was admissible to go before the jury.

It is well settled that any act done or declaration made by one of two conspirators in furtherance of the conspiracy, though in the other's absence, may be shown in evidence against the other. *McGuffin* v. *State,* 156 Ark. 392, and cases cited; *Burns* v. *State,* 155 Ark. 1, and *Stroud* v. *State,* 167 Ark. 502.

It is also insisted that the court erred in allowing the witnesses for the State to testify that Crip Martin claimed the pistol with which the shooting was done, and said that he was going to stay with the defendant. They claim that the conspiracy had ended, and that the testimony was inadmissible on that account, because the defendant was not present when the declaration by Mar-

tin was made. When the connection of two or more individuals to do an unlawful act is shown, every act and declaration of each member of the conspiracy in pursuance of their concerted plan is in law the act and declaration of them all, and on that account is original evidence against each of them. Hence it is necessary that the acts, and declarations thus admitted be those only which were made and done during the pendency of the criminal enterprise and in furtherance of its object. Under the authorities cited above, if they took place at a subsequent period of time after the conspiracy had ended, they would be merely a narrative of a past occurrence, and should be rejected as hearsay evidence.

A narrative of a past event has no necessary connection with the act done, and does not tend to explain it. It can not be said, however, that the testimony referred to was the narrative of a past event and had no connection with the killing. It will be remembered that the defendant left the place of business of Crip Martin immediately preceding the killing and walked to where the deceased was standing talking to some other men a short distance away and in plain sight of Martin's place of business. When the altercation between the defendant and the deceased commenced, Crip Martin, who was standing in front of his place of business, cried out, "Shoot him" or "Kill him." He was close enough to have been heard by the defendant. As soon as the shooting was over, the defendant was arrested by the deputy town marshal, and the pistol with which he did the shooting was taken away from him. Crip Martin's father was trying to get him to go in the store, but Crip refused to go. He claimed the pistol with which the shooting was done as his own, and said that he was going to stay with the defendant. He was still excited, and all of the attendant circumstances show that the criminal enterprise was not ended, so that his statements should be considered as the narrative of a past event. On the other hand, the attendant circumstances under which the statement was made show that it was a part of their

unlawful enterprise, and tended in a measure to explain their connection and joint action in the premises.

Complaint is also made that the court refused to instruct the jury not to consider any testimony as to the declarations and conduct of Crip Martin in the absence of the defendant, and in instructing the jury that they might consider any testimony as tending to show that the defendant and Crip Martin had entered into a conspiracy or agreement that the defendant should kill the deceased.

We do not deem it necessary to set out either the refused instruction or the one given by the court on this point. As we have already seen, the evidence was sufficient to warrant the jury in finding such a conspiracy, and the court was correct in submitting to the jury as a question of fact whether or not the evidence was sufficient to establish such conspiracy. Complaint was made of the instruction given that there was no evidence upon which to base it. Therefore we hold that this assignment of error is not well taken.

The court in other instructions fully and fairly submitted to the jury the respective theories of the State and of the defendant, and we find no prejudicial error in the record in giving or refusing instructions.

Counsel for the defendant also insists that the court erred in keeping the jury together during the progress of the trial. Under § 3187 of Crawford & Moses' Digest, the separation of the jurors before a case is submitted to them may be allowed in the discretion of the court. Counsel for the defendant contend that the discretion of the court was abused under the particular facts of this case as shown by the record.

It appears from the record that the court first told the jury that it would be allowed to separate under the usual instructions and admonition given to it by the court. Before the jury was allowed to separate, however, at the request of the prosecuting attorney, the court reconsidered its ruling and ordered they be kept together. In the first place, it may be said that there is nothing in the record tending to show that any prejudice

resulted to the defendant from the action of the court in changing its ruling in respect to the separation of the jurors. In the second place, no objection was made by the defendant to the action of the court in this respect, and, under our rules of practice, this assignment of error can not be considered on appeal. Even in a capital case it is necessary to object to the ruling of the court at the trial in order to present a question for review in this court. *Sullivan* v. *State,* 161 Ark. 19.

We do not find any prejudicial error in the record, and it follows that the judgment must be affirmed.