HOUSE *v.* STATE.

Crim. 3980

Opinion delivered March 23, 1936.

*W. D. Swaim*, for appellant.

*Carl E. Bailey*, Attorney General, *Guy E. Williams* and *J. F. Koone*, Assistants, for appellee.

Baker, J. The grand jury in Garland County indicted Roy House and Ayliff Draper of the crime of murder in the first degree for the killing of Tom Menser. The homicide occurred in March of 1935. Separate trials were awarded the parties, and upon the trial of House he was convicted of murder in the first degree, and his punishment was fixed at death. This trial was had last October. He has appealed from that judgment of conviction. He alleges several grounds as a reason for the reversal.

The first is that he was convicted of a crime with which he is not charged in the indictment. The second is that the testimony conclusively shows that House and Draper had entered into a conspiracy to rob Tom Menser and that House had withdrawn from this agreement prior to the commission of the crime which was in fact committed by Draper. On that account, the defendant alleges that he was not guilty of the crime. He alleges further that one Richard Pittman, a juror trying the case, fraudulently imposed himself upon the court and upon the defendant by making false statements, deceiving the court and the defendant so that he was not excused by the court nor by the defendant. There were some objections urged to instructions given on the trial of this case, but said objections may be disposed of by the settlement of the matters above set out. It may be stated that substantially the only objections made were those above stated and to the argument of the prosecuting attorney.

Such objections as were made to instructions only tend to explain or accentuate further defendant's position.

Not a great deal of the testimony will be set forth herein. Only a small part of it will be argued. However, whatever is necessary to an explanation of the issues will be stated.

The first contention of the defendant is to the effect that he was indicted for murder in the first degree and that the indictment does not charge that the homicide occurred in the attempt to commit a felony, robbery, and the defendant urges and argues, from his own testimony, that, although he had agreed with Draper that they would rob Tom Menser, he withdrew from the agreement in good faith before any assault was made upon Tom Menser in the effort to rob him, and that the assault was made by Draper without his consent and after he had withdrawn from the agreement or conspiracy that the two of them had entered into for that purpose; that he was therefore not guilty, first, because he did not strike or beat Menser, who was killed by Draper, and, second, because of his withdrawal prior to Draper's assault.

In the presentation of this theory, let it be said that the two parties, Draper and House, went to the home of Menser in the night time to rob Menser. House was to gain admittance because he was known to Menser, and one of them was to hold him while the other procured his money or valuables which they sought. When they entered Menser's well-lighted house, he was very friendly in inviting them to sit with him, and House, according to his statement, sat down near Menser and Draper walked behind Menser. House's own evidence as to his withdrawal is to the effect that he looked at Draper and shook his head; that as Draper prepared to assault Menser he again looked Draper in the eye and the second time he shook his head, meaning, as he said, to tell Draper that their victim had been so kind that they must not assault him. Notwithstanding this telepathic communication which House interprets as indicating his innocence in this case, Draper made a violent assault upon the victim with an implement which he had taken from the tool box

of the car in which they had driven to the home of Menser. House was horror stricken, unable to move, unable to shout a protest at the shocking brutality of his companion and finally the victim was beaten into insensibility, and House then regained such control of his shocked nerves and overcame his abhorrence of the brutal assault of the helpless victim to the extent that he helped Draper search the bloody corpse of Draper's victim and the house in the completion of the planned robbery, from which he says he had withdrawn a few minutes before.

The foregoing is the effect of House's own statement, his own testimony, and his explanation of his conduct. He argues that since nobody disputed his testimony that it should be believed. All of it was most probably believed by the jury, except that at no time did House either hesitate or attempt to withdraw from the scheme or plan that the two had formed. His position is that since he was not indicted for the crime of murder in an attempt to commit another felony, malice, after premeditation and deliberation, was not shown, and he was therefore not guilty of murder.

We have already said in many cases that the juries may consider the manner of the killing in a determination of whether there was malice, whether there was deliberation or premeditation. The latest announcement perhaps upon this question is the case of *Dowell* v. *State,* 191 Ark. 311, 86 S. W. (2d) 23; *Weldon* v. *State,* 168 Ark. 534, 270 S. W. 968.

It was entirely proper that this case should go to the jury; that the homicide was committed in the commission of the robbery. This court said in the case of *Spear* v. *State,* 184 Ark. 1047, 44 S. W. (2d) 663: "The general rule is that all who join in a common design to commit an unlawful act, the natural and probable consequence of which involves the contingency of taking life, are responsible for a homicide committed by one of them while acting in pursuance or furtherance of the common design, although the homicide might not have been in contemplation of the parties when they conspired to commit the unlawful act, and although the actual perpetrator is not identified. This rule was recognized in *Carr* v. *State,*

480

43 Ark. 99. In that case reference is made with approval to the case of *Stephens* v. *State,* 42 Ohio St. 150, where the indictment appears to have been one which charged the offense of murder at common law."

Although the indictment did not allege that the killing was one in the perpetration of a robbery, it did allege the malicious, deliberate and premeditated killing, and, under well-settled rule of decisions in this State, it was entirely proper to submit to the jury the question of the deliberate and premeditated murder. *Powell* v. *State,* 74 Ark. 355, 85 S. W. 781; *Rayburn* v. *State,* 69 Ark. 177, 63 S. W. 356; *McCabe* v. *State,* 149 Ark. 585, 233 S. W. 771; *Spear* v. *State,* 184 Ark. 1047, 44 S. W. (2d) 663. It must follow therefore that the court did not err in giving instruction No. 3 complained of by the defendant, which instruction is to the effect that, if the jury believe beyond a reasonable doubt that the defendant, Roy House, on the 8th day of March, 1935, in Garland County, Arkansas, did wilfully, unlawfully and feloniously, and with malice aforethought, and after premeditation and deliberation, or while in the perpetration of or in the attempt to perpetrate robbery, kill and murder one Tom Menser by striking and beating him, the said Tom Menser, on the head and about the body with a certain blunt instrument and that the said Tom Menser died from the effects of the striking and beating, as charged in the indictment, you should find the defendant guilty of murder in the first degree.

Appellant urges that he was indicted under the provision of the statute which defines murder as the "unlawful killing of a human being, in the peace of the State, with malice aforethought, either expressed or implied." He asserts that he was not indicted under that other provision of the statute which says: "All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration of or in the attempt to perpetrate arson, rape, robbery, burglary or larceny, shall be deemed murder in the first degree."

As far as we have been able to determine the appellant is insisting upon a refinement in the matter of instruction which this court has never made. The defendant was charged with having committed a crime of murder in first degree, by beating and striking his victim with a blunt instrument. This thoroughly apprised him of the charge and of the details or manner in which it was committed. It was not necessary that the State, in making that charge, should attempt to discover and set up the motivating factor controlling the defendant in the commission of the crime. The prosecution has never been expected to assume a burden so great in a case of this kind. It matters little whether defendant was convicted upon a charge of premeditated and deliberate murder, or a murder committed in perpetration of the act of robbery. A conviction supported by substantial evidence, as this one is, works no prejudice whatever to any right of the defendant.

Although the appellant was present, aiding and abetting, the scene was beyond his description. He summed it up in these words: "I was hurt, speechless, to see that he had hit the old man and was down on top of him beating him. I couldn't say how much he beat the old man, but I do know it was awful, the worst I had ever saw, and it was my first."

The same question raised by appellant here was argued in the case of *Rayburn* v. *State*, 69 Ark. 177, 63 S. W. 356. In that case Rayburn shot and killed Carpenter in the perpetration of robbery, and the court gave substantially the same instruction in the case as No. 3 in this case, and this court approved the instruction in the following language: "The record shows affirmatively that the facts and circumstances tended 'to prove the murder as charged in the indictment.' In the absence of any proof tending to show that the homicide, although committed in the attempt to perpetrate robbery, was unintentional, it must be held that it was as stated to be shown in the record. The court's charge, so far as the record shows, was but based upon the proof."

This court also said in the case of *McCabe* v. *State*, 149 Ark. 585, 233 S. W. 771: "Malice might exist in the

commission of the homicide, even though the primary purpose of the offender was to commit another felony, and it is generally a question for the jury to determine whether or not the crime was committed with malice aforethought, even though it was done in the perpetration of or in the attempt to perpetrate another felony of the kind mentioned in the statute.'' See also *Spear* v. *State*, 184 Ark. 1047, 44 S. W. (2d) 663.

On account of the fact that we have stated the effect and in some instances quoted from appellant's testimony, it perhaps is unnecessary that we argue appellants theory that he had withdrawn from the conspiracy before Draper committed murder in his presence. There is no evidence of his withdrawal, except his own bare assertion, followed by his confession that he lingered after the completion of this murder to rob the body of the victim of the conspiracy which he says was entered into between him and Draper. Again we may refer to the case of *Spear* v. *State, supra,* for the authority that when criminals are associated together, and while engaged in a common design, one of them intentionally kills a person they are attempting to rob, all are equally guilty.

The only other question that has arisen and which deserves serious consideration is the charge that one Richard Pittman, a juror, upon his examination as to his qualifications, fraudulently imposed himself upon the court and the defendant by asserting that he had not formed or expressed any opinion as to the guilt or innocence of the defendant, when in fact appellant charges he had, shortly after the homicide was committed, expressed himself in rather strong or almost violent language in regard to the defendant. That question is presented to us by appellant in this statement in the motion for a new trial. ''(21) The misconduct of juror, Richard Pittman, in withholding information in regard to statement of opinion previous to his qualifying as a juror.''

There is found in the record this affidavit: ''Willard H. Sharp, being first duly sworn deposes and says: That upon the day of Ayliff Draper's arrest for the murder of one Tom Menser, he was at Richard Pittman's filling station on highway 170, and when it

was mentioned concerning the above-stated arrest, Richard Pittman said, after reading the newspaper account and learning that Roy House was being sought for the same murder, 'That I could go into the jury box and burn those boys for the murder of Tom Menser, and if I happened to be one of the jurors, I would have to give them death.' (Signed) Willard H. Sharp."

The implied charge made here is a serious one. The word "implied" is used advisedly for the reason that the charge becomes serious only by inference, and by the assumption of certain facts which do not appear in the entire record. We have just quoted from the motion for a new trial. This is the only statement with reference to this matter in the record presented on this appeal.

Appellant's counsel, however, argue in the brief that after the completion of the trial, while counsel was still in the court room, Sharp, whose affidavit is presented, offered this information to them which they had not, prior to that time, been able to learn. They argue that that was their first information in regard to the facts stated in Sharp's affidavit. This may be true. That statement, however, is only offered by way of argument.

We concede it to be our duty in every instance to protect the rights of the accused to the extent that he may have a fair and impartial trial. The presumption in the absence of an affirmative showing to the contrary is that there was no error. The burden is upon the appellant to present such facts as show that error was committed, and unless he is able to do this, the error will not be presumed.

He does not allege in his motion for a new trial, nor anywhere else in this record, the matter that he argues, that is, that he did not have this information at the time Pittman was accepted on the jury. If the matters set up in Sharp's statement were true, we believe, if we may judge from the frankness of Pittman himself upon *voir dire,* such facts would have been readily discovered with ordinary diligence before the trial or in the qualification of the jurors. Counsel will recognize the principle that the possibility of fraudulent or improper proof must necessarily require strict adherence to rules of practice

requiring those who feel themselves aggrieved by verdicts and judgments to present the whole matter by record to the trial court without relying upon any unwarranted presumptions. The trial judge was in position to examine into matters, had facts been alleged that the defendant had been imposed upon and was without information which he alleges was obtained immediately following the trial. He has shown no prejudicial error.

It is further argued that the prosecuting attorney was permitted to argue improperly to the jury that the jury should not give the defendant a life sentence for the reason that a life sentence at most would mean but about seven years in the penitentiary, when the defendant would return to his old life of robbery and murder. But this objection was not made during the trial, nor argument. It was not until the jury had retired to consider the verdict that appellant made this objection and requested the court to recall the jury and instruct the jury that the argument was improper and should not be considered. This objection not only came too late, but we do not decide that it was improper.

The case of *Hogan* v. *State,* 191 Ark. 437, 86 S. W. (2d) 931, can be of no aid to appellant here. In that case the error consisted in the statement of an alleged fact by the prosecuting attorney in the presence and hearing of the jury. This fact had a bearing upon the guilt or innocence of the defendant, or served to inform the jury in a determination of that question. Here the prosecuting attorney was arguing, as he explained, from statistics or matters of common knowledge, that defendants convicted or sentenced to life imprisonment ordinarily served not exceeding seven years. There was nothing in this bearing in any way upon the question of the guilt or innocence of the defendant. It related to but one proposition and that was relative to the severity of the punishment that should be administered. The prosecuting attorney may argue, in proper cases, the kind or severity of punishment that should be meted out to offenders.

We have examined this entire record, and, although we have not discussed in detail every matter argued, we find no error prejudicial to appellant's rights.

The judgment is affirmed.