FRANKLIN BOSNICK *v.* STATE OF ARKANSAS

5486                                           454 S. W. 2d 311

Opinion delivered June 1, 1970
[As amended June 15, 1970.]

*Harold Sharpe,* for appellant.

*Joe Purcell,* Attorney General; *Mike Wilson,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. The appellant, Franklin Bosnick, age 40, was charged with first degree murder jointly with his son, Franklin Bosnick, Jr., 17, Danny Wayne McKay, 18, and Dewey Ray Murray, 24. The homicide occurred in the perpetration of robbery, but the information made no mention of that fact, charging the defendants instead with a willful, deliberate, malicious, and premeditated killing. Ark. Stat. Ann. § 41-2205 (Repl. 1964). The appellant, tried separately, was found guilty and sentenced to death. The most serious question in the case is whether the trial court was right in refusing to instruct the jury on the lesser degrees of homicide.

We state only the essential facts pertinent to the appeal. On December 31, 1968, the elder Bosnick and the three youths decided to rob a combined filling station, grocery store, and residence owned and occupied by Mr. and Mrs. James Gatteys, near the community of Shannondale. All four men were armed, their weapons comprising a rifle, two shotguns, and a pistol. The older man drove the group to the scene and waited outside in the car while the three younger men, their faces masked with silk stockings, entered the store to accomplish the robbery. It was then about dark.

The Gatteyses and a young clerk were in the store. Franklin, Jr., took the lead in holding up the three occupants of the premises and taking what money there was available. While the robbery was in progress a neighbor, Jimmy Vance, approached the store, looked in, and surmised what was happening. Vance went back to his truck and used a two-way farm radio to summon the police.

The deceased, Jessie J. Morgan, a city policeman at Hughes, was the first officer to arrive. Morgan knocked at the door twice, saying both times: "Mrs. Gatteys, it's the law." Young Bosnick directed Mrs. Gatteys to open the door while he stood behind her. Bosnick fired once over the woman's shoulder and then ran outside and continued to fire until his weapon was empty. He then ran back indoors, and Murray in turn went outside with the rifle and put additional shots into Officer Morgan's chest. It was later found that one cartridge in the officer's pistol had been fired.

While the youths were completing the robbery a voice from the outside—presumably the appellant's—said: "Come on; let's go." The three youths, having taken money and two additional guns from the Gatteyses, then left the premises and joined the older Bosnick in the waiting car. As they were about to drive away, two state policemen arrived, disarmed the robbers, and took all four into custody without further gunfire or violence.

As we have indicated, the trial court refused the defendant's request that the jury be instructed on the lower degrees of homicide. Had the information charged the defendants with murder in the perpetration of robbery, then the court's action might have been correct (leaving aside for the moment the fact that the elder Bosnick merely waited outside), because proof of a homicide in the course of a robbery or other felony specified in the statute relieves the State of the burden of proving premeditation or the specific intent to take life. Hence, under such an indictment, the proof may justify the court in refusing to submit the lesser degrees of homicide. *Davis* v. *State,* 182 Ark. 123, 30 S. W. 2d 830 (1930); *Washington* v. *State,* 181 Ark. 1011, 28 S. W. 2d 1055 (1930); *Clark* v. *State,* 169 Ark. 717, 276 S. W. 849 (1925).

In the case at bar, however, Bosnick was not charged with murder in the perpetration of robbery. It would therefore have been error for the court to submit that charge only, with no reference to deliberation or premeditation. See our opinion on rehearing in *Rayburn* v. *State,* 69 Ark. 177, 63 S. W. 356 (1901); also *House* v. *State,* 192 Ark. 476, 92 S. W. 2d 868 (1936).

Nor, in this case, do we think that a different view of the matter is called for by Initiated Act 3 of 1936. That act permits the indictment or information simply to charge that "John Doe, on January 1, 1936, . . . did murder Richard Roe." Ark. Stat. Ann. § 43-1007 (Repl. 1964). If the defendant is not satisfied with such an abbreviated charge he may request a bill of particulars. § 43-1006. In response to that request the State would presumably be required to amplify the indictment or information by charging premeditated murder, or murder in the perpetration of a specified felony, or both.

Here, however, Bosnick had no reason to request a bill of particulars, because the State elected from the outset to charge him with premeditated murder rather than with felony murder. The initiated act was intended

to abolish technicalities in the wording of criminal charges, but it certainly was not intended to enable the State to charge one "class of murder" (the phrase used in the *Rayburn* case, *supra*), and then prove a different class of murder. Hence, as far as the initiated act is concerned, we treat this case just as if the State had elected, in response to a request for a bill of particulars, to charge premeditated murder rather than murder in the perpetration of robbery.

With respect to the need for instructions on the lower degrees of homicide, Bosnick's comparatively passive participation in the crime raises added problems. First, we have pointed out that when a group plans an armed robbery, "each one of the party would be responsible for every thing done which followed directly and immediately in the execution of the common purpose as one of its probable and natural consequences." *Clark* v. *State, supra.* But whether the homicide was a probable and natural consequence of the common plan would ordinarily be a question for the jury.

Secondly, the jury could have attributed to the elder Bosnick a full share of responsibility for what took place inside the Gatteys store, even though the original plan did not contemplate a homicide. *Henry* v. *State,* 151 Ark. 620, 237 S. W. 454 (1922). But the jury was not required to do so. By the decided weight of authority, and by what we regard as the better rule, the jury may assign degrees of guilt among the conspirators in accordance with their respective culpability.

In Texas, for example, at a time when the distinction between principals and accessories had been, as in Arkansas, modified to some extent, the court had this to say:

Under our statute there is no such division of principals, but all are principals who are present and encourage in the act; including both the one actually performing the act, and others who may be present aiding in its performance. . . . The contention

of appellant that a principal of the second degree, or one who, under our statute, did not actually commit the offense himself, but who was present, and, knowing the unlawful intent, etc., aided the person who did commit it, can only be convicted of the same degree as the actual doer, is not a sound one. If he enters into the commission of the offense with the same intent and purpose, then his offense will be of the same degree as the actual doer, but he may have a different criminal intent from the one who perpetrates or does the act; and in such case he will be guilty according to the intent with which he may have performed his part of the act. [Citing authority.] We therefore hold that it is competent, under an indictment charging all as principals in murder, to convict one of such principals of one degree of felonious homicide, and another of some other degree of felonious homicide, according to the intent with which such principals may have performed the particular act attributed to and proved against them. [*Red* v. *State,* 39 Tex. Crim. R. 667, 47 S. W. 1003 (1898).]

A similar thought was expressed by the New Mexico court in *State* v. *Lord* 42 N. M. 638, 84 P. 2d 80 (1938):

The question seems to be, whether under this statute, every person connected with the murder, whether principal or aider and abettor, must necessarily have been guilty of the same degree of murder. The statute does not say so. For instance, their participation in crime might have lacked the essential element of premeditation and deliberation that must exist before a homicide is murder in the first degree; whereas the principal may have long prepared himself to commit the murder and had deliberated over the matter sufficiently to make the crime murder in the first degree.

Other authorities to the same effect include *State* v. *Absence,* 4 Porter (Ala.) 397 (1837); *McCoy* v. *State,* 40 Fla.

494, 24 So. 485 (1898); Perkins, Criminal Law, p. 586 (1957). The opposite view was taken, by a divided court, in *State* v. *Shon,* 47 Haw. 158, 385 P. 2d 830 (1963).

In this case the appellant waited outside the Gatteys store while the three younger men consummated the robbery that led to Officer Morgan's death. The jury might or might not have considered this defendant to have been equally as culpable as one or more of the others. We think the issue should have been submitted to the jury by instructions defining the lesser degrees of homicide. For this reason the judgment must be reversed. (We need not and do not decide—the point not being before us—whether the lesser degrees of homicide should be submitted to the jury with respect to a passive conspirator such as the appellant when the information charges a homicide in the perpetration of another felony.)

The appellant's remaining arguments do not require an extended discussion. The trial court was right in allowing the State's witnesses to testify to the declarations made by the three youths during the course of the robbery, such declarations being admissible against all the conspirators. *Lesieurs* v. *State,* 170 Ark. 560, 280 S. W. 9 (1926). Nor do we find any abuse of discretion in the trial court's decision to allow the introduction of photographs of Officer Morgan's body. *Oliver* v. *State,* 225 Ark. 809, 286 S. W. 2d 17 (1956). At the trial there was no objection to the court's giving an instruction in the language of Ark. Stat. Ann. § 41-2246, having to do with the accused's burden of proving the justification or excusability of the homicide; but upon a retrial that instruction should not be given, for the reasons stated in *Bagley* v. *State,* decided September 15, 1969, 444 S. W. 2d 567.

Reversed and remanded for a new trial.

Harris, C. J., and Jones, J., dissent.

Carleton Harris, Chief Justice. I cannot agree that

the conviction in this case should be reversed, for, in my view, Bosnick was not entitled to instructions relating to the lower degrees of homicide.

And in reaching this conclusion, it is not necessary to go beyond our own statutes and cases.

Let it first be stated that, of course, it was not necessary for Bosnick to actually fire the shot that killed Morgan; it was sufficient that he was jointly engaged with others in the robbery, and he was properly indicted as a principal, being present, aiding, and abetting. *Henry* v. *State*, 151 Ark. 620, 237 S. W. 454.

The majority opinion is predicated on the fact that Bosnick was not charged with murder in the perpetration of robbery, but rather was charged with a willful, malicious, and premeditated killing.[1] In my view, the manner of the killing, under our statute, is immaterial. In 1936, the people of Arkansas adopted Initiated Act No. 3, being an Act to "Amend, Modify, and Improve Judicial Procedure" and the "Criminal Law". Included in this act were certain provisions which appear as Section 43-1006, and 43-1007, Ark. Stat., 1964 Replacement. 43-1006 reads as follows:

"The language of the indictment must be certain as to the title of the prosecution, the name of the court in which the indictment is presented, and the name of the parties. *It shall not be necessary to include statement of the act or acts constituting the offense, unless the offense cannot be charged without doing so. Nor shall it be necessary to allege that the act or acts constituting*

---

[1]It might here be stated that the majority opinion vaguely leaves an impression that it may be necessary to instruct on the lower degrees of homicide, even though one is charged with murder while committing a felony, the majority stating, "Had the information charged the defendants with murder in the perpetration of robbery, then the court's action *might* (my emphasis) have been correct (leaving aside for the moment the fact that the elder Bosnick merely waited outside), because proof of a homicide in the course of a robbery or other felony specified in the statute relieves the State of the burden of proving premeditation or the specific intent to take life."

*the offense were done wilfully, unlawfully, feloniously, maliciously, deliberately or with premeditation, but the name of the offense charged in the indictment shall carry with it all such allegations.*[2] The State, upon request of the defendant, shall file a bill of particulars, setting out the act or acts upon which it relies for conviction.

Section 43-1007 provides:

"An indictment may be substantially in the following form:

The State of Arkansas, )
      vs.           ) In the Pulaski Circuit Court.
John Doe.      )

The grand jury of Pulaski County, in the name and by the authority of the State of Arkansas, accuse John Doe of the crime of murder in the first degree (or other crime, as the case may be), committed as follows: The said John Doe, on January 1, 1936, in Pulaski County, did murder Richard Roe, against the peace and dignity of the State of Arkansas.

In *Thompson* v. *State* (1943) 205 Ark. 1040, 172 S. W. 2d 234, this Court sustained the validity of the Information which charged Thompson with the crime of Murder in the First Degree, the Information alleging:

"The said defendant Henry Thompson on the 23 day of December, 1942, in Cleveland county, Arkansas, did unlawfully murder Mrs. Susie Vetito against the peace and dignity of the State of Arkansas* * *."

It would not appear that Bosnick was in ignorance of the details of the crime with which he was charged, but in such case, he could have moved for a Bill of Particulars as provided in 43-1006.

---

[2]Emphasis supplied.

It is interesting to note that the same view was taken by the Supreme Court of Erie County, New York. In the case of *People* v. *Tutuska,* 192 N. Y. S. 2d 350, (affirmed by the New York Court of Appeals) the court said:

"The purpose of proving participation in the commission of another felony which leads up to and results in the homicide is entirely different than the one suggested by the defendant. There can be no murder without evidence of malice and of a felonious intent and a depraved mind. The indictment was sufficient in form when it simply accused defendant of having killed the deceased 'willfully, feloniously and with malice aforethought,' (citing cases). On the trial it was necessary to prove such malice and willful and felonious conduct, and this necessity was satisfied in accordance with the provision of the statute by showing that the homicide occurred while the defendant was engaged in the commission of another felony."

The case then cites an earlier opinion[3] written by Chief Justice Cardozo, of the New York Court of Appeals, as follows:

"Homicide, we said, is not murder 'without evidence of malice and of a felonious intent and a depraved mind'. [citing case] The malice or the state of mind may be proved by showing that the act was done with a deliberate and premeditated design to kill. The case will then fall under subdivision 1 (§ 1044). It may be proved by showing that the act was done by one then and there engaged in the commission of another felony. [citing cases] The case will then fall under subdivision 2. *In the one case as in the other a single crime is charged, the independent felony like the deliberate and premeditated intent being established solely for the purpose of characterizing the degree of the crime so charged, the evil mind or purpose inherent in the killing.*"

---

[3]*People* v. *Lytton,* 257 N. Y. 310.

Section 41-2205 Ark. Stat., 1964 Replacement, defines First Degree Murder as follows:

"All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration of or in the attempt to perpetrate, arson, rape, robbery, burglary or larceny, shall be deemed murder in the first degree."

In *Clark* v. *State,* 169 Ark. 717, 276 S. W. 849 this court said:

"In the discussion of homicide by poison or in the perpetration of felony, the annotator there said: 'The courts have frequently decided that where the only evidence of a homicide tends to show that it was committed by poison or *in the perpetration of, or an attempt to perpetrate, one of the felonies enumerated in the statute defining murder in the first degree, no instruction on any grade of homicide less than murder in the first degree is necessary, and that one convicted of murder in the first degree on such evidence is not entitled to a new trial because of a failure to charge the law on a lower grade of homicide, or because of an instruction that no conviction of a lower degree can be had.*[4]' "

The majority opinion agrees that *Clark* v. *State, Supra* also holds that when a group plans an armed robbery,

"each one of the party would be responsible for everything done which followed directly and immediately in the execution of the common purpose as one of its probable and natural consequences."

The majority then add this sentence:

"But whether the homicide was a probable and

---

[4]Emphasis supplied.

natural consequence of the common plan would ordinarily be a question for the jury."

I find no Arkansas case which sustains the view that where a victim is killed in a robbery participated in by several different persons, those not involved in the killing are entitled to instructions on all degrees of homicide; in fact, *Henry* v. *State,* holds just to the contrary. And, in that case, the court added, "this was true, even though the conspiracy did not expressly contemplate the commission of the crime of murder."

The use of language describing the manner of the murder is only descriptive. As recently as March 30 of this year, in *Turner* v. *State,* 248 Ark. 367, 452 S. W. 2d 317, we approved a statement in the Idaho case of *State* v. *Hall,* 383 P. 2d 602, "The robbery was alleged only as a condition or circumstance characterizing the murder as first degree."

To summarize, our cases hold that one who participates in a robbery, though he does not actually fire the shot that kills the victim, is just as guilty of murder as the participant who did fire the shot. Further, it is not necessary that the manner of the killing be alleged in the Information or Indictment; still further, where the murder is committed while perpetrating a felony, the only proper instruction is that of first degree murder, and the defendant is not entitled to instructions on the lesser degrees of homicide.

The people of this state, in 1936, passed a progressive measure, doing away with inconsequential technicalities in charging persons with crimes,[5] thus recognizing that justice is not determined by what may or may not be alleged in the Information. Yet, the measure adopted by the people (Initiated Act No. 3 of 1936)

---

[5]For instance, at one time, in charging one with first degree murder, it was not only necessary to charge that the crime was committed with malice and premeditation, but also the weapon used had to be identified, (pistol, knife, etc.,) and in case of a pistol, the indictment, if proper, alleged that the party murdered was shot "with a 38 pistol, loaded with powder and leaden bullets".

adequately protected the rights of the defendant, that measure providing that the indictment must be certain as to what the defendant was charged with, the name of the court in which he was charged, and the name of the parties against whom he had committed the offense. As a further safeguard, the act provides that the State, upon request of a defendant, shall file a Bill of Particulars, setting out the acts it relies upon for conviction.

I am sorry that the procedural progress gained from the passage of that act, has now been discarded.

I therefore respectfully dissent.

JONES, J. joins in this dissent.